Rules, Regulations, and Procedures



# ALABAMA
# BOARD
# OF
# PARDONS AND PAROLES

Revised March 21, 2001

Article One

Intake

1) As soon as practical after a prisoner is sentenced to prison, the Central Office staff shall prepare a file on the case. The appropriate field office(s) will be directed to forward a copy of any investigations to the Central Office. If no investigation has been done at that point, the field office shall promptly conduct its investigation and submit its report. When the appropriate investigations are in the file, the Board's designee shall study the file and schedule initial parole monthly docket. There shall be no presumption that the Board will grant parole.

2) The Board's designee shall calculate the date at which a majority of the Board may act. In doing so, the total term of the prisoner's sentences shall be taken into account. A majority of the Board may lawfully grant parole after the prisoner has served one third of his sentence, or ten years, whichever is lesser. If a prisoner is serving one or more sentences at the time he commits his crime, the designee shall also calculate one third or ten years of the new sentence, calculated from the date of the new sentence, with any applicable credits, and shall determine which of the two calculations results in the later date. The later of the two dates shall control.

3) The Board's designee shall also determine whether correctional incentive time has been applied by the Department of Corrections. If correctional incentive time is applied, that fact shall be taken into account in scheduling initial parole consideration.

4) A staff member designated by the Board shall also determine whether the investigation report is sufficient for Board action. If significant information is lacking, this designee shall request further information from the field office.

5) If a prisoner is receiving correctional incentive time, his initial parole consideration shall be scheduled as follows: (a) for terms of five years or less, set on current docket. (b) for terms of five to ten years, schedule initial parole consideration approximately twelve months prior to the minimum release date; (c) for terms of more than ten years and up to fifteen years, schedule initial parole consideration approximately twenty-four months prior to the minimum release date; (d) for total terms in excess of fifteen years, schedule initial parole consideration approximately thirty-six months prior to the minimum release date.

6) If the controlling sentence is not subject to correctional incentive time, initial parole consideration shall be scheduled as soon as practicable after the prisoner will become eligible for release by majority vote, unless the Board's designee finds other factors that indicate another docket would be more appropriate. If the designee finds mitigating circumstances, the designee may schedule initial parole consideration earlier than the majority vote eligibility date; however, reasons for departure from the standard shall be documented in the file.

7)  When an inmate is convicted of one or more of the Class A felonies Rape I, Robbery I with serious physical injury, Kidnapping I, Murder, Burglary I with serious physical injury, Attempted Murder, Sodomy I, Arson I with serious physical injury, or Sexual Torture (who are eligible for parole), the initial parole consideration date shall be set in conjunction with the inmate's completion of 85 (eighty-five) per cent of his or her total sentence or 15 (fifteen) years, whichever is less, unless the designee finds mitigating circumstances such as the imminent death of the inmate due to medical problems, or a petition by the sentencing judge or prosecuting district attorney. Serious physical injury in this paragraph is as defined in title 13A of the Alabama Code.

8)  Any exercise of discretion by the designee scheduling initial parole consideration, so as to schedule such consideration earlier or later than the most easily calculated set date, shall be supported by a memorandum setting forth the factors considered and the reasons for the deviation. This memorandum shall be placed in the file for the consideration of the Review Committee and the Board.

9)  If the only sentence imposed on a prisoner is a split sentence, the Board will defer to the sentencing court to determine when the prisoner is ready for release. If the prisoner is serving a split sentence and one or more other sentences, the Board will exercise jurisdiction over those other sentences to determine whether parole is consistent with society's welfare.

10) If a prisoner is serving two or more sentences, and the law authorizes parole consideration on some, but not all of his sentences, then he shall be scheduled for parole consideration on those sentences over which the Board has jurisdiction, unless a grant of parole in those cases would have no effect on the time of his release from prison.

| 9 LED2D 837, 372 US 391  FAY v NOIA |
| --- |

EDWARD M. FAY, Warden, et al., Petitioners,

*vs.*

CHARLES NOIA

# 372 US 391, 9 L Ed 2d 837, 83 S Ct 822

[No. 84]

**Argued January 7 and 8, 1963.**

**Decided March 18, 1963.**

## 9 LED2D / 9 LED2D 837, 372 US 391  FAY v NOIA / SUMMARY

### SUMMARY

Three defendants, among them the petitioner in the instant habeas corpus proceedings, were convicted in a New York state court of a felony murder, the sole evidence against each defendant being his signed confession. The petitioner did not, but the other defendants did, appeal their convictions. While these appeals were unsuccessful, subsequent legal proceedings in the state courts resulted in the releases of the other defendants on findings that their confessions had been coerced. Petitioner instituted the present habeas corpus proceeding in the United States District Court for the Southern District of New York, in which the coercive nature of his confession was conceded. Relief was denied on the ground that because of his failure to appeal he had not exhausted the remedies available in the state courts. (183 F Supp 222.) The Court of Appeals for the Second Circuit reversed and ordered that petitioner's conviction be set aside and that he be discharged from custody unless given a new trial forthwith. (300 F.2d 345.)

On certiorari, the Supreme Court of the United States affirmed the judgment of the Court of Appeals. In an opinion by Brennan, J., expressing the views of six members of the Court, it was held that (1) federal courts have power under the federal habeas corpus statute to grant relief despite the applicant's failure to have pursued a state remedy not available to him at the time he

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

applies; (2) the doctrine under which state procedural defaults constitute an adequate and independent state law ground barring direct review by the United States Supreme Court is not to be extended to limit the power granted to federal courts under the federal habeas corpus statute; (3) the petitioner's failure to appeal was not a failure to exhaust "the remedies available in the courts of the State" which would preclude federal habeas corpus relief under 28 USC § 2254, that requirement referring only to a failure to exhaust state remedies still open to the applicant at the time he files his application for habeas corpus in the federal court; and (4) the petitioner's failure to appeal could not be deemed an intelligent and understanding waiver of his right to appeal such as to justify the withholding of federal habeas corpus relief, in view of the fact that a retrial granted on appeal might well have led to a death sentence, as shown by a statement made by the state trial <*pg. 838> judge in imposing sentence, that the defendant's past record and his involvement in the crime almost led the judge to disregard the jury's recommendation against a death sentence.

Harlan, J., with the concurrence of Clark and Stewart, JJ., dissented on the ground that the District Court had no power, statutory or constitutional, to release the petitioner from state detention, because his custody by the state did not violate any federal right, since it was pursuant to a conviction whose validity rested upon an adequate and independent state ground-his failure to appeal-which the federal courts are required to respect.

Clark, J., in a separate dissenting opinion, elaborated on the unfortunate consequences of the Court's holding on state law enforcement.

## 9 LED2D / 9 LED2D 837, 372 US 391  FAY v NOIA / SUBJECT OF ANNOTATION

### SUBJECT OF ANNOTATION

**Beginning on page 1246, infra.**

**Necessity of hearing in federal habeas corpus proceedings challenging validity of conviction of crime**

## 9 LED2D / 9 LED2D 837, 372 US 391  FAY v NOIA / ANNOTATION REFERENCES

### ANNOTATION REFERENCES

1. Exhaustion of judicial remedies afforded by state courts as condition of issuance by federal court of writ of habeas corpus for release of petitioner held or imprisoned by state authorities.  88 L ed 576, 94 L ed 785, 96 L ed 129, 97 L ed 543.

2. Admissibility of pretrial confession in criminal case.  1 L ed 2d 1735, 4 L ed 2d 1833.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

3. Necessity of hearing in federal habeas corpus proceedings challenging validity of conviction of crime. 9 L ed 2d 1346.

4. Denial of relief to prisoner on habeas corpus as bar to second application. 161 ALR 1331, 92 L ed 1378.

## 9 LED2D / 9 LED2D 837, 372 US 391  FAY v NOIA / HEADNOTES
### HEADNOTES

### Classified to U.S. Supreme Court Digest, Lawyers' Edition

**Habeas corpus § 14.5, 16 - by state prisoner in federal court - exhaustion of state remedies.**

1. Federal courts have power under the federal habeas corpus statute (28 USC § 2241) to grant relief despite the applicant's failure to have pursued a state remedy not available to him at the time he applies; the doctrine under which state procedural defaults are held to constitute an adequate and independent state law ground barring direct review by the United States Supreme Court is not to be extended to limit the power granted the federal courts under the federal habeas corpus statute.

**Habeas corpus § 14 - by state prisoner in federal court - failure to appeal from state conviction.**

2. A defendant's failure to appeal from his state court conviction is not a failure to exhaust "the remedies available in the courts of the State" as required by 28 USC § 2254; that requirement refers only to a failure to exhaust state remedies still open to the applicant at the time he files his application for habeas corpus in the federal court.

**Habeas corpus § 14 - by state prisoner in federal court - failure to appeal from state conviction - waiver.**

3. A defendant's failure to appeal from his state court conviction of felony murder resulting in life imprisonment does not constitute an intelligent and understanding waiver of his right to appeal such as to justify the withholding of federal habeas corpus relief where a retrial granted upon such appeal might well have led to a death sentence, as shown by a statement made by the state trial judge in imposing the life sentence, that the defendant's past record and his involvement in the crime almost led the judge to disregard the jury's recommendation against a death sentence.

**Habeas Corpus § 1, 7 - functions of writ.**

4. Habeas corpus has other functions <*pg. 839> besides inquiry into illegal detention with a view to an order releasing the petitioner; illustrative are habeas corpus ad respondendum; ad satisfaciendum; ad prosequendum, testificandum, deliberandum; ad faciendum et recipiendum.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Habeas Corpus § 1 - constitutional privilege.

5. Habeas corpus is a great constitutional privilege; there is no higher duty than to maintain it unimpaired and unsuspended, save only in the cases specified in the Federal Constitution.

Habeas Corpus § 1 - function of writ.

6. The function of the writ of habeas corpus is to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints; vindication of due process is its historic office.

**Habeas Corpus § 44 - function at common law.**

7. At common law habeas corpus is not limited to inquiry into the jurisdiction, in a narrow sense, of the committing court.

**Habeas Corpus § 5 - power of federal courts.**

8. The Federal Constitution invites, if it does not compel, a generous construction of the power of the federal courts to dispense the writ of habeas corpus conformably with common-law practice.

**Habeas Corpus § 5, 28 - violation of Federal Constitution.**

9. Restraints contrary to the Federal Constitution may be challenged on federal habeas corpus even though imposed pursuant to the conviction of a court of competent jurisdiction, whether federal or state.

**Constitutional Law § 840.5 - due process - coerced confession.**

10. A conviction procured by a coerced confession is void because obtained in violation of the Fourteenth Amendment.

**Habeas Corpus § 28 - by state prisoner in federal court - coerced confession.**

11. Habeas corpus is the appropriate remedy to challenge a state court conviction procured by a confession which, because coerced, is obtained in violation of the Fourteenth Amendment.

**Habeas Corpus § 10, 37 - by state prisoner in federal court - before state trial - question not raised in state court.**

12. While the federal courts have the power and may discharge an accused in advance of his trial if he is restrained of his liberty in violation of the Federal Constitution or laws, the practice of exercising such power before the question has been raised or determined in the state court is one which ought not to be encouraged.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Habeas Corpus § 14.5 - exhaustion of state remedies.

13. The rule under which federal courts may refuse relief in habeas corpus proceedings until state remedies are exhausted is not one defining power but one which relates to the appropriate exercise of power.

Habeas Corpus § 26; Judgment § 145 - in federal court - weight of state court adjudication - res judicata.

14. The weight to be given a particular state court adjudication of a federal claim later pressed on habeas corpus in a Federal District Court is substantially in the discretion of the federal court; the state adjudication carries the weight that federal practice gives to the conclusion of a court of another jurisdiction on federal constitutional issues, but is not res judicata, and no binding weight is to be attached thereto.

Habeas Corpus § 121 - by state prisoner in federal court - hearing.

15. Even if a state court adjudication of federal constitutional rights turns wholly on primary, historical facts, a Federal District Court has a <*pg. 840> broad power on habeas corpus to hold an evidentiary hearing and determine the facts.

Habeas Corpus § 41 - function of writ.

16. Habeas corpus lies to test proceedings so fundamentally lawless that imprisonment pursuant to them is not merely erroneous but void.

Judgment § 145 - res judicata - in habeas corpus proceedings.

17. The doctrine of res judicata is inapplicable in habeas corpus proceedings.

Habeas Corpus § 1 - nature of writ.

18. The writ of habeas corpus is traditionally characterized as an original (save perhaps when issued by the United States Supreme Court) civil remedy for the enforcement of the right to personal liberty, rather than as a stage of state criminal proceedings or as an appeal therefrom.

Habeas Corpus § 26 - by state prisoner in federal court - finality of state determinations.

19. While a state criminal judgment resting on a constitutional error is not void for all purposes, conventional notions of finality in criminal litigation cannot be permitted to defeat the federal habeas corpus policy that federal constitutional rights of personal liberty shall not be denied without the fullest opportunity for plenary federal judicial review.

Habeas Corpus § 5 - jurisdiction of federal courts.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

20. Federal court jurisdiction in habeas corpus proceedings is conferred by the allegation of an unconstitutional restraint and is not defeated by anything that may occur in the state court proceedings; state procedural rules must yield to this overriding federal policy.

Constitutional Law § 831, 831.5 - due process - right to be heard - procedural guaranties.

21. The scope of due process of law comprehends not only an accused's right to be heard but also a number of explicit procedural rights drawn from the Bill of Rights.

### Constitutional Law § 844 - due process - conduct of trial.

22. A mob-dominated trial is no less a denial of due process because the highest court of the state believed that the trial was actually a fair one.

### Constitutional Law § 831 - due process - state conviction.

23. Due process denied in state court proceedings leading to conviction is not restored just because the state court declines to adjudicate on the merits the claim of denial of due process.

### Habeas Corpus § 41 - prerequisites.

24. Custody in the sense of restraint of liberty is a prerequisite to habeas corpus; the only remedy that can be granted on the writ is some form of discharge from custody.

### Criminal Law § 41 - forfeiture of remedies - effect.

25. While a defendant by committing a procedural default may be debarred from challenging his conviction in the state courts even on federal constitutional grounds, a forfeiture of remedies does not legitimize the unconstitutional conduct by which his conviction was procured.

### Appeal and Error § 487 - state court judgments - resting on adequate state grounds.

26. Notwithstanding the copresence of federal grounds, the United States Supreme Court will decline to review state court judgments which rest on independent and adequate state grounds, substantive or procedural.

### Courts § 762; Supreme Court of the United States § 11 - advisory opinions - moot questions.

27. The United States Supreme Court is under an obligation to refrain from rendering advisory opinions or passing upon moot questions.

### Habeas Corpus § 16 - federal jurisdiction.

28. The jurisdictional prerequisite <*pg. 841> of federal habeas corpus jurisdiction as to state prisoners is not the judgment of a state court but detention simpliciter.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Habeas Corpus § 5, 35 - federal courts - power.

29. A federal court has the power to release a person unlawfully confined, but it has no other power and cannot revise a state court judgment.

Habeas Corpus § 8 - futility of writ as ground for refusal.

30. If a prisoner is detained lawfully under one count of the indictment, he cannot challenge the lawfulness of a second count on federal habeas corpus.

## Habeas Corpus § 14.5 - exhaustion of state remedies.

31. The provision in 28 USC § 2254 under which a state prisoner's application for a federal writ of habeas corpus shall not be granted unless the applicant has exhausted the remedies available in the state courts is limited in its application to failure to exhaust state remedies still open to the applicant at the time he files his application in federal court.

## Appeal and Error § 910.3 - certiorari distinguished from writ of error.

32. Review on certiorari does not provide a normal appellate channel in any sense comparable to the writ of error.

## Habeas Corpus § 35 - in federal court by state prisoner - jurisdiction - procedural defaults in state proceedings.

33. The jurisdiction of the federal courts in habeas corpus proceedings instituted by a state prisoner is not affected by procedural defaults incurred by the applicant during the state court proceedings.

## Habeas Corpus § 5 - discretion of federal judge.

34. Discretion is implicit in the command of the federal habeas corpus statute (28 USC § 2243) that the judge, after granting the writ of habeas corpus and holding a hearing of appropriate scope, "dispose of the matter as law and justice require."

## Equity § 87; Habeas Corpus § 1 - equitable principles.

35. Habeas corpus has traditionally been regarded as governed by equitable principles, among them the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.

## Habeas Corpus § 9 - in federal court - forfeiture of state remedies.

36. In federal habeas corpus proceedings the district judge may in his discretion deny relief to a state prisoner who has deliberately bypassed the orderly procedure of the state courts and in so

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

doing has forfeited his state court remedies, but this discretion does not permit the introduction of legal fictions into federal habeas corpus; the controlling standard depends on the considered choice of the petitioner, and a choice made by counsel not participated in by the petitioner does not automatically bar relief.

Habeas Corpus § 9, 121 - in federal court - waiver of federal claim - hearing.

37. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forwent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate bypassing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits-though only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default.

Annotation: p.1246, infra.

**Habeas Corpus § 26 - waiver - effect of state court's finding.**

38. A state court's finding that an accused waives his federal rights does not bar independent determination of <*pg. 842> the question by the federal courts on habeas corpus.

**Courts § 792 - federal question - waiver.**

39. Waiver affecting federal rights is a federal question.

**Habeas Corpus § 47 - violation of constitutional rights.**

40. While the case of each of three defendants tried together and convicted of a felony murder upon the sole evidence of their coerced confessions stands on its own, no just and humane legal system can tolerate a result whereby the two of the defendants who had unsuccessfully appealed from their convictions are released in subsequent legal proceedings because their confessions were coerced, but the third defendant, because of his failure to appeal from his conviction and the consequent failure of his post-conviction remedies, remains in jail for life; for such anomalies affronting to the conscience of a civilized society, habeas corpus is the ultimate remedy.

**Habeas Corpus § 9 - lack of state remedy.**

41. If a state withholds an effective remedy from the victim of unconstitutional state action, the federal courts, under the habeas corpus statute (28 USC § 2241), have the power and the duty to provide it.

*Point from Separate Opinion*

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

SUPREME COURT OF ALABAMA / 1986 / 486 So. 2d 500::State v.
Holman::January 17, 1986

486 So. 2d 500::State v. Holman::January 17, 1986

LNI:3RX3-YHT0-003C-900Y-00000-00
Ex parte State of Alabama (Re: State of Alabama v. Robert Holman)
Supreme Court of Alabama
486 So 2d 500486 So. 2d 500; 1986 Ala LEXIS 33651986 Ala. LEXIS 3365
No. 84-985
January 17, 1986

**Editorial Information: Prior History**

Certiorari to the Court of Criminal Appeals (6 Div. 578).

**Disposition**

REVERSED AND REMANDED.

**Counsel**                    Charles A. Graddick, Attorney General, and Bernard B. Carr, Assistant
Attorney General, for Petitioner.
                              William E. Friel, II, Birmingham, for Respondent.

**Judges:** Houston, Justice wrote the opinion. Torbert, C. J., Maddox, Faulkner, Jones, Almon, Shores,
Beatty, and Adams, JJ., concur.

## SUPREME COURT OF ALABAMA / 1986 / 486 So. 2d 500::State v. Holman::January 17, 1986 / Opinion

**Opinion**

**Opinion by:**              HOUSTON

**{486 So. 2d 501}** HOUSTON, Justice.

We granted the State of Alabama's petition for certiorari in this case to determine whether the trial
judge erred in denying Robert Holman's motion to withdraw his guilty plea. The Court of Criminal
Appeals held that he did and reversed 486 So.2d 497. The facts, as set out in its opinion, are as
follows:

"Robert Holman was charged with selling drugs in violation of the Alabama Uniform Controlled
Substances Act. His attorney, Mr. David Luker, negotiated a plea bargain with Deputy District
Attorney Rod Nelson. The sentencing agreement was that upon a plea of guilty, Holman would
receive a sentence of fifteen years' imprisonment in this case, to run concurrent with a fifteen
year sentence he had already received upon a plea of guilty in another case. In addition, a third
case, pending before the Jefferson County grand jury, was to be dismissed or nol-prossed by
the deputy district attorney.

"The terms of the plea bargain appear to be undisputed. Holman was enrolled in a drug
rehabilitation program at the time that he pleaded guilty and the court agreed to defer his sentencing
from that date, March 20, 1984, until June 15, 1984, so that Holman might complete his drug

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to
the restrictions and terms and conditions of the Matthew Bender Master Agreement.

rehabilitation program and get his affairs in order before going to prison. On March 20, the court informed Holman that it was imposing some additional conditions upon the sentencing agreement. The additional conditions imposed were, first, that Holman appear on June 15 for sentencing and, second, that he must not get arrested again.

"Holman failed to appear on June 15 and was arrested by narcotics officers on June 28th. In the apartment or condominium where Holman was arrested along with other people, the narcotics officers discovered marijuana, some syringes, a sawed-off shotgun, a revolver, and a derringer. When Holman appeared for sentencing, the court sentenced him to life imprisonment in the penitentiary. . . ."

The record reveals that the following exchange occurred between Holman and the trial judge on March 20, 1984:

"THE COURT: Okay. As I understand it, Robert, you are to take a fifteen year plea on this 83-2319. That is, you are going to plead guilty today; right?

"MR. HOLMAN: Yes, sir.

"THE COURT: At your lawyer's request, I am going to defer sentencing over to June the 15th.

"MR. HOLMAN: Yes, sir.

"THE COURT: When you come in here at 9:00 a.m. on June the 15th, *if you have not picked up any new cases and if you timely appear, come in on time, you will lock into a fifteen year minimum sentence on this case.* The other case, the search warrant case, will be dismissed.

"MR. HOLMAN: Yes, sir.

"THE COURT: *If you fail to appear on June the 15th, or if you get arrested {486 So. 2d 502} again, I reserve the option to sentence you up to life in the penitentiary.*

"MR. HOLMAN: Yes.

"THE COURT: And the other case, the search warrant case will be dismissed.

"MR. HOLMAN: Okay.

"THE COURT: Do we understand each other?

"MR. HOLMAN: Yes, sir.

"THE COURT: We are giving you the opportunity to get your affairs in order, go to the hospital, whatever it is you want to do.

"MR. HOLMAN: Yes, sir.

"THE COURT: But I am extracting from you or I am giving you a very large inducement to behave yourself and to come in appropriately in June.

"MR. HOLMAN: Yes, sir.

"THE COURT: Do you understand what will happen if you get arrested again?

"MR. HOLMAN: Yes, sir.

"THE COURT: What? When we catch up with you, what is going to happen?

"MR. HOLMAN: I have the other charge and when the sentence --

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

"THE REPORTER: Judge, I am sorry, I can't hear.

"THE COURT: The fifteen years will be off and I could give you up to life, right?

"MR. HOLMAN: Yes, sir.

"THE COURT: Okay. Does that express the agreement?

"MR. LUKER: Nearly. The case he is pleading to is fifteen to run cc [sic] with the case that is on appeal.

"THE COURT: Yes. 82-1181. I have written it down. You are going to dismiss your appeal on that case?

"MR. HOLMAN: Yes, sir.

"THE COURT: This will run cc [sic]. I wrote it down, Dave, I forgot to mention it.

"MR. LUKER: And any cases that may be pending before the Grand Jury or that may be made, Rod has said that they would not make any new cases at this point.

"THE COURT: All right. So, your net sentence is fifteen years, when you come in in June. Now, if these narcotic officers tell me that you are active in narcotics, between now and then, all deals are off.

"MR. HOLMAN: Yes, sir.

"THE COURT: And you have already copped out and you can't take it back. And I could nail your hide for life, okay?

"MR. HOLMAN: Yes, sir.

. . . .

"THE COURT: I would think that if you behave yourself appropriately, that it would go well for you. It would go worse for you if you didn't behave. How old are you now?

"MR. HOLMAN: Fifty-four.

"THE COURT: Fifty-four. I don't know how long you would be down there. I know you would be down there a long time on a life sentence, consecutive with the other case. So, you have every incentive to come in and bite the bullet on this thing and get it over with, okay?

". . . .

"THE COURT: Okay. Well, do you plead guilty, Robert, to selling drugs?

"MR. HOLMAN: Yes, sir.

"THE COURT: On your plea I sentence you to fifteen years -- excuse me, I accept your plea of guilty and find you guilty. And I will defer or put off sentence until June the 15th.

"MR. HOLMAN: Yes, sir.

"THE COURT: *Under the stipulations that we have already gone over, all right?*

"MR. HOLMAN: Yes, sir.

"THE COURT: I am going to put you up on this calendar and we will be looking for you.

"MR. HOLMAN: I will be here."

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(Emphasis added.)

The Court of Criminal Appeals, relying upon the authority of *Blow v. State*, 49 Ala.App. 623, 274 So.2d 652 (Ala.Crim.App. 1973), and *English v. State*, 56 Ala.App. 704, {486 So. 2d 503} 325 So.2d 211 (Ala.Crim.App. 1975), *cert. denied* 295 Ala. 401, 325 So. 2d 216 (Ala. 1976), determined that the trial judge refused to carry out the terms of the plea bargaining agreement and that, as a result, **Holman** was entitled to withdraw his guilty plea. We disagree and reverse and remand.

Whether or not a defendant should be allowed to withdraw his guilty plea is a matter within the sound discretion of the trial judge. His refusal to allow such a request will not be disturbed except where an abuse of that discretion is demonstrated. *Tiner v. State*, 421 So.2d 1369 (Ala.Crim.App. 1982) (citing *Boykin v. State*, 361 So.2d 1158 (Ala.Crim.App. 1978).) The mere subjective beliefs or expectations of a defendant as to the length of sentence to be imposed, unsupported by any promise from the **State** or indications by the court, are insufficient and unavailing to set aside a guilty plea as unknowingly or involuntarily made. *Tiner v. State, supra.* The fact that a defendant who has knowingly and intelligently pleaded guilty later becomes dissatisfied with the sentence he received does not, alone, constitute a ground for invalidating the guilty plea. *Chapman v. State*, 412 So.2d 1276 (Ala.Crim.App. 1982).

Although it is undisputed that an agreement was reached between Holman's counsel and the prosecutor, which provided for a recommendation of a sentence of 15 years in exchange for a guilty plea, it is apparent from the previously cited portion of the record that Holman's guilty plea was made without objection to, and with full knowledge of, the added conditions set out by the trial judge. Because *Blow v. State, supra,* and *English v. State, supra,* are distinguishable from the instant case, the reliance of the Court of Criminal Appeals on those cases is misplaced. In *Blow,* the trial judge accepted a guilty plea based upon the district attorney's recommendation that the judge sentence the defendant to three years. The sentencing hearing was continued, but the defendant failed to appear on the later date. The trial judge rejected the recommendation and sentenced the defendant to five years.

In *Blow,* the Court of Criminal Appeals relied on the authority of *Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971), which held that when a prosecutor makes a promise which plays a significant part in the plea decision, the promise must be kept. In *Blow,* the court **stated**: "After advising the appellant that he could not take the recommended plea [the judge] should have afforded him an opportunity to withdraw it. Although the judge's prior concurrence may have been conditional, the plea withdrawal was necessary to correct the broken bargain." 49 Ala. at 624, 274 So.2d at 652.

In the present case, unlike in *Blow,* the plea agreement, as amended by the trial judge, specifically contemplated the defendant's further violations; therefore, the trial judge sentenced **Holman** *pursuant to the agreement.* In *Blow,* upon the defendant's failure to appear and his commission of further violations, the trial judge rejected the agreement, which did not specifically contemplate the defendant's failure to appear or his further violations.

Likewise, in *English v. State, supra,* the court held that "if the trial court decides not to carry out the agreement reached between the prosecutor and counsel for the accused, the accused must be afforded the opportunity to withdraw his guilty plea on motion promptly made." 56 Ala.App. at 708, 325 So.2d at 215. That case is distinguishable because the trial judge, in the present case, did not refuse to carry out the amended plea agreement. To the contrary, he sentenced **Holman** pursuant to it.

The purpose of the rule allowing a defendant to withdraw a guilty plea when the trial judge refuses to carry out an agreement reached between the prosecutor (or the trial judge) and defense counsel is

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

to insure that such a plea is made voluntarily, which necessarily requires that it be made with full knowledge of the attendant consequences.

{486 So. 2d 504} We hold, under the facts in this case, that the trial judge did not abuse his discretion in denying Holman's motion to withdraw his guilty plea. To hold otherwise would enable the defendant either to demand a lesser sentence that had been predicated upon a condition he failed to meet, or to withdraw a plea knowingly and voluntarily entered. This would set a dangerous precedent. Therefore, the judgment of the Court of Criminal Appeals is reversed and the cause remanded for entry of judgment consistent with this opinion.

REVERSED AND REMANDED.

Torbert, C. J., Maddox, Faulkner, Jones, Almon, Shores, Beatty, and Adams, JJ., concur.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

COURT OF CRIMINAL APPEALS OF ALABAMA / 1991 / 581 So. 2d 1283::Smith v. State::March 15, 1991

581 So. 2d 1283::Smith v. State::March 15, 1991

LNI:3RX4-4MR0-003C-93SN-00000-00
**Jerome Smith v. State**
**Court of Criminal Appeals of Alabama**
581 So 2d 1283581 So. 2d 1283; 1991 Ala Crim App LEXIS 1891991 Ala. Crim. App. LEXIS 189
**No. CR-90-161**
**March 15, 1991**

**Editorial Information: Subsequent History**

Released for Publication July 9, 1991.

**Editorial Information: Prior History**

Appeal from Jefferson Circuit Court, No. CC-85-1261.10; James S. Garrett, Judge.

**Disposition**

REMANDED WITH INSTRUCTIONS.

**Counsel**

Jerome Smith, pro se.

Don Siegelman, Attorney General, and Beth Slate Poe, Asst. Atty. Gen.

**Judges:** McMillan, Judge. All the Judges concur except Bowen, J. dissenting in part, concurring in part with opinion.

# COURT OF CRIMINAL APPEALS OF ALABAMA / 1991 / 581 So. 2d 1283::Smith v. State::March 15, 1991 / Opinion

### Opinion

**Opinion by:**        McMILLAN

{581 So. 2d 1284} The appellant was convicted of capital murder and was sentenced to life imprisonment without parole. His conviction was affirmed by this Court. Smith v. State, 531 So.2d 1245 (Ala.Cr.App. 1987). Thereafter, the appellant filed the instant petition for relief under Rule 20, A.R.Cr.P., arguing as grounds the following: (1) the facially race-neutral reasons offered for the prosecution's peremptory strikes were insufficient to disprove discrimination; (2) an in-court identification of the appellant was tainted by unfairly suggestive line-up procedures; (3) the appellant's counsel was ineffective at trial for failing to challenge the prosecution's reasons for its peremptory strikes; and (4) the appellant's counsel was ineffective on appeal for failing to raise the issue of the tainted in-court identification.

The record contains no evidence of an answer or response by the State prior to the trial court's summarily overruling and dismissing the appellant's petition. As grounds for the dismissal, the trial court found that the first and third issues of the petition had previously been addressed by both the trial court and the Court of Criminal Appeals, that the second issue had previously been considered

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

at trial and did not need to be ruled on again concerning an additional issue, and that the fourth issue was not a matter for the consideration of the trial court.

We do not address the merits of the appellant's petition, because this cause must be remanded for further action by the trial court. When the State does not respond to a petitioner's allegations, the unrefuted statement of facts must be taken as true. *Chaverst v. State,* 517 So.2d 643, 644 (Ala.Cr.App. 1987). Further, when a petition contains matters which, if true, would entitle the petition to relief, an evidentiary hearing must be held. *Ex parte Boatwright,* 471 So.2d 1257, 1258 (Ala. 1985). A petitioner is entitled to notice as to any grounds of preclusion, so as to enable him to formulate a response. *Ex parte Rice,* 565 So.2d 606, 608 (Ala. 1990). Thus, because of the State's failure to respond, the appellant was never given the requisite notice, and the cause must be remanded. Upon remand, the trial court should require the district attorney's office to address the issues in the appellant's petition and to come forward with specific pleadings as to any grounds of preclusion. The trial court is authorized to conduct an evidentiary hearing and to take further action as necessary to comply with the order of this Court. The findings of the trial court shall be returned to this Court within 90 days.

REMANDED WITH INSTRUCTIONS.

## COURT OF CRIMINAL APPEALS OF ALABAMA / 1991 / 581 So. 2d 1283::Smith v. State::March 15, 1991 / Concur

### Concur

**Concur by:**         BOWEN (In Part)

## COURT OF CRIMINAL APPEALS OF ALABAMA / 1991 / 581 So. 2d 1283::Smith v. State::March 15, 1991 / Dissent

### Dissent

**Dissent by:**         BOWEN (In Part)

{581 So. 2d 1285} BOWEN, JUDGE, dissenting in part, concurring in part.

The majority sets aside the judgment of the circuit court denying the appellant's petition for post-conviction relief and remands this cause so that the district attorney may be required to file a response as to each of the four grounds raised by the petitioner-appellant. In my opinion, this is improper and constitutes a mistaken application of *Ex parte Rice,* 565 So.2d 606 (Ala. 1990). Grounds #1, #2, and #3 of the petition were properly denied. This cause should be remanded only in regard to ground #4.

The petition contains four grounds: 1) The prosecution did not give race-neutral reasons for the exercise of its peremptory strikes against black veniremembers. 2) The in-court identification of the petitioner was tainted by "excessively suggestive" pretrial identification procedures. 3) On the remand of this case by the Alabama Court of Criminal Appeals, trial counsel was ineffective because he "failed to offer any evidence or argument that the reasons given by the prosecution for his use of peremptory challenges against black jurors was not sufficient." 4) Petitioner's appellate counsel was guilty of "inadequate preparation and unwise choices of strategy" and was ineffective by not raising the issue of the improper identification procedures.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

In denying the petition, the circuit court entered the following order:

"The Petitioner in this case was indicted and tried for the offense of Capital Murder and the jury returned a verdict finding the Petitioner guilty of Capital Murder on September 26, 1985.

"At the punishment phase of the proceedings the jury recommended to the Court the punishment of life imprisonment without provision for parole. On November 8, 1985 at the punishment phase of the proceeding, the Court sustained the jury's recommendation and imposed life imprisonment without provision for parole. The Defendant subsequently gave oral notice of appeal and the case was appealed to the Court of Criminal Appeals. Subsequent to the Supreme Court of the United States ruling in the case of *Batson v. Kentucky* the matter was remanded back to the trial court for determination as to whether the prosecution had exercised its peremptory challenges in a racially discriminatory manner. On remand the trial court held a hearing and determined, that in fact, the prosecution had not used their challenges in a racially discriminatory manner and resubmitted the matter in transcript to the Court of Criminal Appeals.

"On August 23, 1988, the Alabama Court of Criminal Appeals sustained the conviction with an affirmance specifically referring to the remandment order and specifically affirmed the trial court in its ruling concerning the *Batson* challenge.

"The Petitioner has again raised this issue in his Rule 20 Petition and as this matter has previously been addressed by the trial court and the Court of Criminal Appeals, the Petitioner is denied relief under aspect #1 of his Petition.

"Aspect #2 in the Petitioner's Rule 20 Motion is a matter that was ruled on by the trial court at trial and as the court has previously ruled on this particular issue, it need not rule again concerning an additional issue, therefore, Petition for relief is denied in aspect #2 of the Petitioner's Rule 20 Petition.

"Aspect #3 of the Rule 20 Petition is the same as #1 and this has already been ruled on by the trial court and affirmed by the Court of Criminal Appeals, therefore, aspect #3 of the Petition is hereby denied.

"The last aspect of the Petitioner's Rule 20 Petition alleges that the Defense attorney was ineffective in representing him on appeal. As this matter is not consideration for this court, the court will deny relief under this aspect as relief could only be granted by the Appellant Courts of this state. For these reasons, as previously stated, the relief prayed for under the Rule 20 Petition heretofore filed by the Petitioner is hereby overruled and denied."

**{581 So. 2d 1286}** The circuit court properly denied ground #1 of the petition. In *Smith v. State*, 531 So.2d 1245, 1248 (Ala.Cr.App. 1987), this Court held: "After applying the principles of *Batson [v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90, 90 L. Ed. 2d 69 (1986),] and *[Ex parte] Branch* [526 So. 2d 609 (Ala. 1987),] to the instant case, we conclude that the trial court accurately concluded that the prosecutor did not use his peremptory strikes for a discriminatory purpose." Under Rule 20.2(a), A.R.Crim.P.Temp. (now Rule 32.2(a), A.R.Crim.P.), "a petitioner will not be given relief under this rule based upon any ground: . . . (2) which was raised or addressed at trial; or . . . (4) which was raised or addressed on appeal . . . ." In this case, the *Batson* issue was raised on appeal and was fully addressed by this Court on original submission and on return to remand. *Smith* 531 So.2d at 1246-48.

The circuit court properly denied ground #2 of the petition because the issue of the identification was raised at trial. Temporary Rule 20.2(a)(2). Obviously, identification was an issue at trial. On appeal, the appellant-petitioner argued that the trial court improperly restricted his cross-examination of two of the State's witnesses in connection with their identification of the appellant. *Smith*, 531 So.2d at

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

1249-50. Another issue raised on appeal concerned the trial court's refusal of a requested jury instruction on eyewitness identification testimony. *Id.* at 1251.

Ground #3 of the petition was properly denied because this ground, that counsel was ineffective because he failed to offer any evidence to show that the prosecutor's reasons for striking blacks were insufficient, ignores the finding of this Court that those reasons were race-neutral. Furthermore, this is a bare conclusionary allegation by the petitioner who does not even allege the existence of any such evidence or in any manner identifies that explanatory evidence.

However, the circuit court improperly denied ground #4 of the petition alleging that appellate counsel was ineffective for failing to raise on appeal the issue of the alleged improper pretrial identification. On this point, I agree with the majority that this cause must be remanded. Whether appellate counsel was ineffective in failing to raise a specific issue on appeal is a matter which must first be considered and addressed by the circuit court before it is subject to appellate review by this Court.

Contrary to the position taken by the majority, even if grounds #1, #2, and #3 of the petition are true, the petitioner is not entitled to relief because those grounds are precluded by the Rules of Criminal Procedure set out above. The majority has misinterpreted *Ex parte Rice,* 565 So.2d 606 (Ala. 1990), which requires that a petitioner be afforded notice of the specific grounds of preclusion upon which the district attorney relies in his motion to dismiss. *Rice* does not hold or imply that the State must file a response to a petition for post-conviction relief before the petition is dismissed by the circuit court. Although Temporary Rule 20.7(a) (now Rule 32.7(a)) states that "the district attorney . . . shall file with the court and send to the petitioner or counsel for the petitioner, if any, a response . . ." I do not interpret that language to prohibit a circuit court from dismissing a petition before any response is filed by the State. Such a dismissal is within the inherent power of the circuit court, as this Court has previously recognized.

In *Sheats v. State,* 556 So.2d 1094, 1095 (Ala.Cr.App. 1989), this Court held:

"The petition is meritorious on its face and, because the allegations of the petition stand unrefuted and unchallenged, they must be accepted as true. *Ex parte Floyd,* 457 So.2d 961, 962 (Ala. 1984).

"'Where the trial court does not make a finding on the record based upon its personal knowledge and where the State does not file an answer or return denying the allegations of fact in the petition, those facts must be accepted as true.' *Colvin v. State,* 521 So.2d 1352, 1353 (Ala.Cr.App. 1987).

"This cause is remanded to the circuit court for further proceedings. If the circuit judge has personal knowledge of the actual facts underlying the allegations {581 So. 2d 1287} in the petition, he may deny the petition without further proceedings so long as he states the reasons for the denial in a written order. Cf. Temp.A.R.Cr.P., Rule 20.7(d). Otherwise, the circuit court should direct the district attorney to file a response, Rule 20.7, Temp.A.R.Cr.P., and proceed under Rule 20, Temp.A.R.Cr.P."

Where the circuit court's denial of a petition states the specific reason or reasons why each ground of the petition is dismissed or rejected, the petitioner has been denied no constitutional right of notice.

The circuit court properly denied grounds #1, #2, and #3 of the petition. However, the cause should be remanded to the circuit court for further proceedings not inconsistent with this opinion *only* with regard to ground #4 of the petition.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

COURT OF CRIMINAL APPEALS OF ALABAMA / 1994 / 639 So. 2d 583::Henry v. State::March 4, 1994, Released

639 So. 2d 583::Henry v. State::March 4, 1994, Released

LNI:3RX4-37N0-003C-9550-00000-00
**Crayman Henry v. State**
**COURT OF CRIMINAL APPEALS OF ALABAMA**
639 So 2d 583639 So. 2d 583; 1994 Ala Crim App LEXIS 651994 Ala. Crim. App. LEXIS 65
CR-93-32
**March 4, 1994, Released**

**Editorial Information: Subsequent History**

Released for Publication July 26, 1994.

**Editorial Information: Prior History**

Appeal from Etowah Circuit Court. (CC-92-872). William Rhea, Trial Judge.

**Disposition**          REVERSED AND REMANDED.

**Counsel**          For Appellant: Charles Hart, Gadsden.
                    For Appellee: James H. Evans, atty. gen., and Frank Patterson,
          deputy atty. gen.

**Judges:** TAYLOR

# COURT OF CRIMINAL APPEALS OF ALABAMA / 1994 / 639 So. 2d 583::Henry v. State::March 4, 1994, Released / Opinion

### Opinion

**Opinion by:**          TAYLOR

**{639 So. 2d 583}** TAYLOR, JUDGE

The appellant, Crayman Henry, pleaded guilty to the unlawful distribution of a controlled substance. § 13A-12-211, Code of Alabama 1975 . He was sentenced to 20 years in prison.

The appellant contends that his guilty plea was meaningless because he says he was misinformed about the minimum and maximum sentences he might receive as a result of pleading guilty. The appellant was advised that the minimum sentence he could receive was 15 years in prison. Unlawful distribution of a controlled substance is a Class B felony, which is punishable by a minimum of two years in prison. In this case the sentence was subject to enhancement under the Habitual Felony Offender Act because the appellant had two prior felony convictions. Under § 13A-5-9(b)(2), the appellant would face a minimum sentence of 15 years. § 13A-5-9(b)(2), Code of Alabama 1975 . Further, the appellant also faced an additional five years enhancement because the sale occurred within three miles of a school. § 13A-12-250. The appellant therefore faced a minimum sentence of 20 years in prison. There is no question that the appellant was misinformed of the correct minimum sentence he could receive by pleading guilty.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Initially, we observe that this issue was carefully preserved for our review by timely objections in the trial court and also by a motion to withdraw the guilty plea. *Cantu v. State*, [Ms. 1920426, October 15, 1993] ___ So. 2d ___ (Ala. 1993).

The appellant correctly asserts that the judgment must be reversed because the court violated Rule 14.4, A.R.Crim.P., which states, in part:

> "The court shall not accept a plea of guilty without first addressing the defendant personally in the presence of counsel in open court for the purposes of:

> "(1) Ascertaining that the defendant has a full understanding of what a plea of guilty means and its consequences, by informing the defendant of and determining that the defendant understands:

> "....

> "**{639 So. 2d 584}** (ii) The mandatory minimum penalty, if any, and the maximum possible penalty provided by law, including any enhanced sentencing provisions ...."

> The committee comments to the above rule specifically refer to the enhancement provision of § 13A-12-250, Code of Alabama 1975 . There is no question that the appellant should have been informed of the enhanced sentence he was to receive under § 13A-12-250.

The state contends that any error here was harmless because, it argues, the sentence the appellant received was within the limits stated by the court, even though the court was incorrect as to the minimum sentence. This does not alter the fact that the law was violated. The accused's right to know the possible sentence he faces is absolute. His decision to plead guilty was made while he was laboring under the misapprehension that he could receive a lighter sentence than was allowable under the law. The decision to plead guilty was therefore not made knowingly and voluntarily.

*Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), mandates that a guilty plea be voluntarily and intelligently entered.

"Subsequent to *Boykin*, supra, it has become established that the defendant must be informed of maximum and minimum possible sentences *as an absolute constitutional prerequisite to acceptance of a guilty plea.*"

*Carter v. State*, 291 Ala. 83, 277 So. 2d 896, 898 (1973).

The judgment must be reversed and the cause remanded to the Circuit Court for Etowah County. That court is directed to allow the appellant to withdraw his guilty plea, and if the appellant so wishes, to enter another plea after he has been fully apprised of the correct range of sentence or to allow other proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

ALL THE JUDGES CONCUR.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

30 LED2D / 30 LED2D 427, 404 US 257  SANTOBELLO v NEW YORK

---

## 30 LED2D 427, 404 US 257  SANTOBELLO v NEW YORK

### RUDOLPH SANTOBELLO, Petitioner,

*vs.*

### NEW YORK

## 404 US 257, 30 L Ed 2d 427, 92 S Ct 495

[No. 70-98]

**Argued November 15, 1971.**

**Decided December 20, 1971.**

## 30 LED2D / 30 LED2D 427, 404 US 257  SANTOBELLO v NEW YORK / SUMMARY

### SUMMARY

After being indicted on two felony counts under New York Statutes, and after negotiating with the prosecuting attorney, the defendant withdrew his not guilty plea and entered a guilty plea to a lesser included offense, the prosecutor agreeing to make no recommendation as to the sentence to be imposed.  The New York trial court accepted the guilty plea and set a date for a sentencing hearing, which was subsequently postponed, and at which a new prosecuting attorney appeared and, apparently being ignorant of his colleague's commitment, recommended that the maximum one-year sentence be imposed.  Although defendant objected and sought adjournment of the sentencing hearing, the judge stated that he was not influenced by the prosecutor's recommendation, and imposed the maximum sentence on the basis of a presentence report.  The Supreme Court of New York, Appellate Division, First Department, affirmed the conviction (35 App Div 2d 1084, 316 NYS2d 194), and the defendant was denied leave to appeal to the New York Court of Appeals.

On certiorari, the United States Supreme Court vacated the judgment and remanded the case. In an opinion by Burger, Ch. J., it was held (1) in expressing the unanimous view of the court, that the disposition of criminal charges by agreement between the prosecutor and the accused-which

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

was an essential component of the administration of justice, to be encouraged when properly administered-must be attended by safeguards, that when a guilty plea rested in significant degree on a promise of the prosecutor, so that it could be said to be part of the inducement, such promise must be fulfilled, and that the state court's affirmance of the conviction was improper in the case at bar, it being immaterial that the breach of agreement by the prosecution was inadvertent, and (2) in expressing the view of four of the seven members of the court, that the case should be remanded to the state court to decide whether the circumstances of the case required only that there be specific performance of the agreement on the plea, with the defendant being resentenced before <*pg. 428> a different judge, or whether the relief sought by the defendant as to withdrawing his guilty plea should be granted.

Douglas, J., concurring, joined the opinion of the court, and expressed the view that where a "plea bargain" was not kept by the prosecutor, the sentence must be vacated and the state court should decide in light of the circumstances of each case whether due process required (1) that there be specific performance of the plea bargain, or (2) that the defendant be given the option to go to trial on the original charges, the defendant's preference to be given considerable, if not controlling, weight in choosing the appropriate remedy.

Marshall, J., joined by Brennan and Stewart, JJ., concurring in part and dissenting in part, agreed with much of the majority's opinion, but expressed the view that where the prosecution breaks a plea agreement and the defendant seeks to vacate his guilty plea rather than to enforce the plea bargain, the relief sought by the defendant must be granted.

## 30 LED2D / 30 LED2D 427, 404 US 257  SANTOBELLO v NEW YORK / RESEARCH REFERENCES

### RESEARCH REFERENCES

21 Am Jur 2d, Criminal Law §§ 484-489, 504-506

8 Am Jur Pl & Pr Forms (Rev ed), Criminal Procedure, Forms 134, 135

US L Ed Digest, Criminal Law §§ 59, 60.5

ALR Digests, Criminal Law §§ 145, 149.3

L Ed Index to Anno, Constitutional Law; Criminal Law

ALR Quick Index, Guilty Plea

Federal Quick Index, Guilty Plea

## 30 LED2D / 30 LED2D 427, 404 US 257  SANTOBELLO v NEW YORK /

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

ANNOTATION REFERENCES

ANNOTATION REFERENCES

Validity of guilty pleas. 25 L Ed 2d 1025.

Court's duty to advise or admonish accused as to consequences of plea of guilty, or to determine that he is advised thereof. 97 ALR2d 549.

Withdrawal of plea of guilty and substitution of plea of not guilty after conviction. 146 ALR 1430.

Duty of court to accept tendered plea of guilt of lesser degree of crime where prosecuting officer has agreed to recommend acceptance of such plea if defendant will turn state's evidence. 96 ALR 1064.

Validity and effect of agreement by prosecuting officer to extend immunity as regards particular charge upon condition that defendant plead guilty to another charge. 85 ALR 1177.

Right to withdraw plea of guilty. 20 ALR 1445, 66 ALR 628.<*pg. 429>

# 30 LED2D / 30 LED2D 427, 404 US 257  SANTOBELLO v NEW YORK / HEADNOTES

HEADNOTES

## Classified to U.S. Supreme Court Digest, Lawyers' Edition

**Appeal and Error § 1692.1; Criminal Law § 59, 60.5 - plea bargaining - prosecution's breach of agreement - remand**

1. A state court's affirmance of a conviction-entered on a guilty plea to a lesser included offense, which plea resulted from negotiations whereby the prosecuting attorney agreed to dismiss two felony charges and to make no recommendation as to the sentence to be imposed-is improper where a new prosecuting attorney, who replaced the original prosecuting attorney and who apparently was ignorant of his colleague's commitment, had recommended the maximum sentence at the sentencing hearing, which resulted in the imposition of such maximum sentence, the fact that the breach of agreement was inadvertent not being material and not lessening the impact of the breach; notwithstanding that the sentencing judge stated that he was not influenced by the prosecutor's recommendation, the United States Supreme Court, in the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of guilty pleas, will vacate the judgment and remand the case to the state court, which is in a better position to decide (1) whether the circumstances require only that there be specific performance of the agreement on the plea, in which case the defendant should be resentenced

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

before a different judge, or (2) whether the relief sought by the defendant as to withdrawing his guilty plea should be granted, in which case the defendant will plead anew to the original charge on two felony counts.

**District and Prosecuting Attorneys § 1 - orderly procedures**

2. The heavy workload in a prosecutor's office does not excuse a lapse in orderly prosecutorial procedures.

**Criminal Law § 59 - "plea bargaining"**

3. The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice; properly administered, it is to be encouraged.

**Criminal Law § 59 - "plea bargaining"**

4. Disposition of criminal charges after plea discussions or "plea bargaining" is not only an essential part of the criminal process but a highly desirable part for the reasons that (1) it leads to prompt and largely final disposition of most criminal cases, (2) it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial, (3) it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release, and (4) by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned; however, all of such considerations presuppose fairness in securing agreement between an accused and a prosecutor.

**Criminal Law § 46.4 - right to counsel - guilty plea**

5. Absent a waiver, an accused pleading guilty must be counseled.

**Criminal Law § 59, 112 - Federal Rules - guilty plea - record**

6. Under Rule 11 of the Federal Rules of Criminal Procedure, governing pleas in federal courts, the sentencing judge must develop, on the record, the factual basis for a guilty plea, as, for example, by having the accused describe the conduct that gave rise to the charge.<\*pg. 430>

**Criminal Law § 59 - guilty plea - voluntariness - promises**

7. A guilty plea must be voluntary and knowing, and if it was induced by promises, the essence of those promises must in some way be made known.

**Criminal Law § 59 - acceptance of guilty plea - judicial discretion**

8. There is no absolute right to have a guilty plea accepted; a court may reject a plea in the

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

exercise of sound judicial discretion.

Criminal Law § 59 - guilty plea - prosecutor's promises

9. The disposition of criminal charges by agreement between the prosecutor and the accused, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances; while those circumstances will vary, nevertheless a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

## 30 LED2D / 30 LED2D 427, 404 US 257  SANTOBELLO v NEW YORK / SYLLABUS

### SYLLABUS

After negotiations with the prosecutor, petitioner withdrew his previous not-guilty plea to two felony counts and pleaded guilty to a lesser-included offense, the prosecutor having agreed to make no recommendation as to sentence. At petitioner's appearance for sentencing many months later a new prosecutor recommended the maximum sentence, which the judge (who stated that he was uninfluenced by that recommendation) imposed. Petitioner attempted unsuccessfully to withdraw his guilty plea, and his conviction was affirmed on appeal.

*Held:*

The interests of justice and proper recognition of the prosecution's duties in relation to promises made in connection with any agreement on a plea of guilty require that the judgment be vacated and that the case be remanded to the state courts for further consideration as to whether the circumstances require only that there be specific performance of the agreement on the plea (in which case petitioner should be resentenced by a different judge), or petitioner should be afforded the relief he seeks of withdrawing his guilty plea.

35 App Div 2d 1084, 316 NYS2d 194, vacated and remanded.

Burger, C. J., delivered the opinions of the Court, in which Douglas, White, and Blackmun, JJ., joined. Douglas, J., filed a concurring opinion, post, p. 263, 30 L Ed 2d 434. Marshall, J., filed an opinion concurring in part and dissenting in part, in which Brennan and Stewart, JJ., joined, post p. 267, 30 L Ed 2d 436.

## 30 LED2D / 30 LED2D 427, 404 US 257  SANTOBELLO v NEW YORK / APPEARANCES OF COUNSEL ARGUING CASE

### APPEARANCES OF COUNSEL ARGUING CASE

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Irving Anolik* argued the cause for petitioner.
*Daniel J. Sullivan* argued the cause for respondent.

Briefs of Counsel, p.883, infra.

## 30 LED2D / 30 LED2D 427, 404 US 257  SANTOBELLO v NEW YORK / OPINION

## OPINION

Mr. Chief Justice *Burger* delivered the opinion of the Court.

[1]    We granted certiorari in this case to determine whether the State's failure to keep a commitment concerning

[404 US 258]

the sentence recommendation on a guilty plea required a new trial.

The facts are not in dispute.  The State of New York indicted petitioner in 1969 on two felony counts, Promoting Gambling in the First Degree, and Possession of Gambling Records in the First Degree, N. Y. Penal Law §§ 225.10, 225.20.  Petitioner <*pg. 431> first entered a plea of not guilty to both counts.  After negotiations, the Assistant District Attorney in charge of the case agreed to permit petitioner to plead guilty to a lesser-included offense, Possession of Gambling Records in the Second Degree, N. Y. Penal Law § 225.15, conviction of which would carry a maximum prison sentence of one year.  The prosecutor agreed to make no recommendation as to the sentence.

On June 16, 1969, petitioner accordingly withdrew his plea of not guilty and entered a plea of guilty to the lesser charge.  Petitioner represented to the sentencing judge that the plea was voluntary and that the facts of the case, as described by the Assistant District Attorney, were true.  The court accepted the plea and set a date for sentencing.  A series of delays followed, owing primarily to the absence of a presentence report, so that by September 23, 1969, petitioner had still not been sentenced.  By that date petitioner acquired new defense counsel.

Petitioner's new counsel moved immediately to withdraw the guilty plea.  In an accompanying affidavit, petitioner alleged that he did not know at the time of his plea that crucial evidence against him had been obtained as a result of an illegal search.  The accuracy of this affidavit is subject to challenge since petitioner had filed and withdrawn a motion to suppress, before pleading guilty.  In addition to his motion to withdraw his guilty plea, petitioner renewed the motion to suppress and filed a motion to inspect the grand jury minutes.

[404 US 259]

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

These three motions in turn caused further delay until November 26, 1969, when the court denied all three and set January 9, 1970, as the date for sentencing. On January 9 petitioner appeared before a different judge, the judge who had presided over the case to this juncture having retired. Petitioner renewed his motions, and the court again rejected them. The court then turned to consideration of the sentence.

At this appearance, another prosecutor had replaced the prosecutor who had negotiated the plea. The new prosecutor recommended the maximum one-year sentence. In making this recommendation, he cited petitioner's criminal record and alleged links with organized crime. Defense counsel immediately objected on the ground that the State had promised petitioner before the plea was entered that there would be no sentence recommendation by the prosecution. He sought to adjourn the sentence hearing in order to have time to prepare proof of the first prosecutor's promise. The second prosecutor, apparently ignorant of his colleague's commitment, argued that there was nothing in the record to support petitioner's claim of a promise, but the State, in subsequent proceedings, has not contested that such a promise was made.

The sentencing judge ended discussion, with the following statement, quoting extensively from the presentence report:

"Mr. Aronstein [Defense Counsel], I am not at all influenced by what the District Attorney says, so that there is no need to adjourn the sentence, and there is no need to have any testimony. It doesn't make a particle of difference what the District Attorney says he will do, or what he doesn't do.

"I have here, Mr. Aronstein, a probation report. I have here a history of a long, long serious criminal <*pg. 432> record. I have here a picture of the life history of this man. ...

[404 US 260]

" 'He is unamenable to supervision in the community. He is a professional criminal.' This is in quotes. 'And a recidivist. Institutionalization-'; that means, in plain language, just putting him away, 'is the only means of halting his antisocial activities,' and protecting you, your family, me, my family, protecting society. 'Institutionalization.' Plain language, put him behind bars.

"Under the plea, I can only send him to the New York City Correctional Institution for men for one year, which I am hereby doing."

The judge then imposed the maximum sentence of one year.

Petitioner sought and obtained a certificate of reasonable doubt and was admitted to bail

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

pending an appeal. The Supreme Court of the State of New York, Appellate Division, First Department, unanimously affirmed petitioner's conviction, 35 App Div 2d 1084, 316 NYS 2d 194 (1970), and petitioner was denied leave to appeal to the New York Court of Appeals. Petitioner then sought certiorari in this Court. Mr. Justice Harlan granted bail pending our disposition of the case.

[2][3]  This record represents another example of an unfortunate lapse in orderly prosecutorial procedures, in part, no doubt, because of the enormous increase in the workload of the often understaffed prosecutor's offices. The heavy workload may well explain these episodes, but it does not excuse them. The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

[404 US 261]

[4]  Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative propects of the guilty when they are ultimately imprisoned. See Brady v United States, 397 US 742, 751-752, 25 L Ed 2d 747, 758, 90 S Ct 1463 (1970).

[5][6][7][8]  However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor. It is now clear, for example, that the accused pleading guilty must be counseled, absent a waiver. Moore v Michigan, 355 US 155, 2 L Ed 2d 167, 78 S Ct 191 (1957). Fed Rule Crim Proc 11, governing pleas in federal courts, now makes clear that the sentencing judge must develop, *on the record,* the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge.1   The plea<*pg. 433> must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must

[404 US 262]

in some way be made known. There is, of course, no absolute right to have a guilty plea accepted. Lynch v Overholser, 369 US 705, 719, 8 L Ed 2d 211, 220, 82 S Ct 1063 (1962); Fed Rule Crim Proc 11. A court may reject a plea in exercise of sound judicial discretion.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[9]  This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

On this record, petitioner "bargained" and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor.  It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial.  The staff lawyers in a prosecutor's office have the burden of "letting the left hand know what the right hand is doing" or has done.  That the breach of agreement was inadvertent does not lessen its impact.

[1]  We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea.  He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case

[404 US 263]

to the state courts for further consideration.  The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i. e., the opportunity to withdraw his plea of guilty.[2]  We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.

The judgment is vacated and the case is remanded for reconsideration not inconsistent with this opinion.<*pg. 434>

## SEPARATE OPINION

Mr. Justice *Douglas*, concurring.

I join the opinion of the Court and add only a word.  I agree both with The Chief Justice and with Mr. Justice Marshall that New York did not keep its "plea bargain" with petitioner and that it

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

is no excuse for the default merely because a member of the prosecutor's staff who was not a party to the "plea bargain" was in charge of the case when it came before the New York court. The staff of the prosecution is a unit and each member must be presumed to know the commitments made by any other member. If responsibility could be evaded that way, the prosecution would have designed another deceptive "contrivance," akin to those we condemned in Mooney v Holohan, 294 US 103, 112, 79 L Ed 791, 794, 55 S Ct 340, 98 ALR 406, and Napue v Illinois, 360 US 264, 3 L Ed 2d 1217, 798 S Ct 1173.

[404 US 264]

These "plea bargains" are important in the administration of justice both at the state[1] and at the federal[2] levels and, as The Chief Justice says, they serve an important role in the disposition of today's heavy calendars.

However important plea bargaining may be in the administration of criminal justice, our opinions have established that a guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial, Duncan v Louisiana, 391 US 145, 20 L Ed 2d 491, 88 S Ct 1444, to confront one's accusers, Pointer v Texas, 380 US 400, 13 L Ed 2d 923, 85 S Ct 1065, to present witnesses in one's defense, Washington v Texas, 388 US 14, 18 L Ed 2d 1019, 87 S Ct 1920, to remain silent, Malloy v Hogan, 378 US 1, 12 L Ed 2d 653, 84 S Ct 1489, and to be convicted by proof beyond all reasonable doubt, In re Winship, 397 US 358, 25 L Ed 2d 368, 90 S Ct 1068. Since Kercheval v United States, 274 US 220, 71 L Ed 1009, 47 S Ct 582, this Court has recognized that "unfairly obtained" guilty pleas in the federal courts ought to be vacated. In the course of holding that withdrawn guilty pleas were not admissible in subsequent federal prosecutions, the Court opined:

"[O]n timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence." Id., at 224, 71 L Ed at 1012.

[404 US 265]

Although Kercheval's dictum concerning grounds for withdrawal of guilty pleas did not expressly rest on constitutional grounds (cf. Frame v Hudspeth, 309 US 632, 84 L Ed 989, 60 S Ct 712) Walker v Johnston, 312 US 275, 85 L Ed 830, 61 S Ct 574, clearly held that a federal prisoner who had pleaded guilty despite his ignorance of and his being uninformed <*pg. 435> of his right to a lawyer was deprived of that Sixth Amendment right, or if he had been tricked by the prosecutor through misrepresentations into pleading guilty then his due process rights were offended. In Walker, the petitioner was granted an evidentiary hearing to prove his factual claims

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

in anticipation of vacating the plea. Accord: Waley v Johnston, 316 US 101, 86 L Ed 1302, 62 S Ct 964; Von Moltke v Gillies, 332 US 708, 92 L Ed 309, 68 S Ct 316. In Machibroda v United States, 368 US 487, 7 L Ed 2d 473, 82 S Ct 510, the defendant alleged that when he threatened to tell his lawyer of private promises made by an Assistant United States Attorney in exchange for a proposed guilty plea, the prosecutor threatened additional prosecutions. Although the Government denied them, the Court held that if the allegations were true, then the defendant would be entitled to have his sentence vacated and the matter was remanded for an evidentiary hearing.

State convictions founded upon coerced or unfairly induced guilty pleas have also received increased scrutiny as more fundamental rights have been applied to the States. After Powell v Alabama, 287 US 45, 77 L Ed 158, 53 S Ct 55, 84 ALR 527, the Court held that a state defendant was entitled to a lawyer's assistance in choosing whether to plead guilty. Williams v Kaiser, 323 US 471, 89 L Ed 398, 65 S Ct 363. In Herman v Claudy, 350 US 116, 100 L Ed 126, 76 S Ct 223, federal habeas corpus was held to lie where a lawyerless and uneducated state prisoner had pleaded guilty to numerous and complex robbery charges. And, a guilty plea obtained without the advice of counsel may not be admitted at a subsequent state prosecution. White v Maryland, 373 US 59, 10 L Ed 2d 193, 83 Ct 1050. Thus, while plea bargaining is not per se unconstitutional, North Carolina v Alford, 400 US 25, 37-38, 27 L Ed 2d 162, 171, 172, 91 S Ct 160, Shelton v United States, 242 F.2d 101,

[404 US 266]

aff'd en banc, 246 F.2d 571 (CA5 1957), a guilty plea is rendered voidable by threatening physical harm, Waley v Johnston, supra, threatening to use false testimony, ibid., threatening to bring additional prosecutions, Machibroda v United States, supra, or by failing to inform a defendant of his right of counsel, Walker v Johnston, supra. Under these circumstances it is clear that a guilty plea must be vacated.

But it is also clear that a prosecutor's promise may deprive a guilty plea of the "character of a voluntary act." Machibroda v United States, supra, at 493, 7 L Ed 2d at 477. Cf. Bram v United States, 168 US 532, 542-543, 42 L Ed 568, 573, 18 S Ct 183 The decisions of this Court have not spelled out what sorts of promises by prosecutors tend to be coercive, but in order to assist appellate review in weighing promises in light of all the circumstances, all trial courts are now required to interrogate the defendants who enter guilty pleas so that the waiver of these fundamental rights will affirmatively appear in the record. McCarthy v United States, 394 US 459, 22 L Ed 2d 418, 89 S Ct 1166; Boykin v Alabama, 395 US 238, 23 L Ed 2d 274, 89 S Ct 1709. The lower courts, however, have uniformly held that a prisoner is entitled to some form of relief when he shows that the prosecutor reneged on his sentencing agreement made in connection with a plea bargain, most jurisdictions preferring vacation of the plea on the ground of "involuntariness," while a few permit only <*pg. 436> specific enforcement. Note: Guilty Plea Bargaining: Compromises By Prosecutors To Secure Guilty Pleas, 112 U Pa L Rev 865, 876 (1964). As one author has stated, the basis for outright vacation is "an outraged sense of fairness"

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

when a prosecutor breaches his promise in connection with sentencing. D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial 36 (1966).

This is a state case over which we have no "supervisory" jurisdiction; and Rule 11 of the Federal Rules

[404 US 267]

of Criminal Procedure obviously has no relevancy to the problem.

I join the opinion of the Court and favor a constitutional rule for this as well as for other pending or oncoming cases. Where the "plea bargain" is not kept by the prosecutor, the sentence must be vacated and the state court will decide in light of the circumstances of each case whether due process requires (a) that there be specific performance of the plea bargain or (b) that the defendant be given the option to go to trial on the original charges. One alternative may do justice in one case, and the other in a different case. In choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State.

Mr. Justice *Marshall,* with whom Mr. Justice *Brennan* and Mr. Justice *Stewart* join, concurring in part and dissenting in part.

I agree with much of the majority's opinion, but conclude that petitioner must be permitted to withdraw his guilty plea. This is the relief petitioner requested, and, on the facts set out by the majority, it is a form of relief to which he is entitled.

There is no need to belabor the fact that the Constitution guarantees to all criminal defendants the right to a trial by judge or jury, or, put another way, the "right not to plead guilty," United States v Jackson, 390 US 570, 581, 20 L Ed 2d 138, 146, 88 S Ct 1209 (1968). This and other federal rights may be waived through a guilty plea, but such waivers are not lightly presumed and, in fact, are viewed with the "utmost solicitude." Boykin v Alabama, 395 US 238, 243, 23 L Ed 2d 274, 279, 89 S Ct 1709 (1969). Given this, I believe that where the defendant presents a reason for vacating his plea and the government has not relied on the plea to its disadvantage,

[404 US 268]

the plea may be vacated and the right to trial regained, at least where the motion to vacate is made prior to sentence and judgment. In other words, in such circumstances I would not deem the earlier plea to have irrevocably waived the defendant's federal constitutional right to a trial.

Here, petitioner never claimed any automatic right to withdraw a guilty plea before sentencing. Rather, he tendered a specific reason why, in his case, the plea should be vacated. His reason was

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

that the prosecutor had broken a promise made in return for the agreement to plead guilty. When a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea. This, it seems to me, provides the defendant ample justification for rescinding the plea. Where a promise is "unfulfilled," Brady v United States, 397 US 742, 755, 25 L Ed 2d 747, 760, 90 S Ct 1463 (1970), <*pg. 437> specifically denies that the plea "must stand." Of course, where the prosecutor has broken the plea agreement, it may be appropriate to permit the defendant to enforce the plea bargain. But that is not the remedy sought here.* Rather, it seems to me that a breach of the plea bargain provides ample reason to permit the plea to be vacated.

It is worth noting that in the ordinary case where a motion to vacate is made prior to sentencing, the government has taken no action in reliance on the previously entered guilty plea and would suffer no harm from the plea's withdrawal. More pointedly, here the State claims no such harm beyond disappointed expectations

[404 US 269]

about the plea itself. At least where the government itself has broken the plea bargain, this disappointment cannot bar petitioner from withdrawing his guilty plea and reclaiming his right to a trial.

I would remand the case with instructions that the plea be vacated and petitioner given an opportunity to replead to the original charges in the indictment.

## 30 LED2D / 30 LED2D 427, 404 US 257  SANTOBELLO v NEW YORK / FOOTNOTES

### FOOTNOTES

1 Fed Rule Crim Proc 11 provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgement upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

2 If the state court decides to allow withdrawal of the plea, the petitioner will, of course, plead anew to the original charge on two felony counts.

1 In 1964, guilty pleas accounted for 95.5% of all criminal convictions in trial courts of general jurisdiction in New York. In 1965, the figure for California was 74.0%. President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 9 (1967).

2 In 1964, guilty pleas accounted for 90.2% of all criminal convictions in United States district courts.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Ibid. In fiscal 1970, of 28,176 convictions in the 89 United States district courts, 24,111 were by pleas of guilty or nolo contendere. Report of Director of Administrative Office of U. S. Courts, for Period July 1 through Dec. 31, 1970, Table D-4, p. A-26.

[7] Mr. Justice Douglas, although joining the Court's opinion (apparently because he thinks the remedy should be chosen by the state court), concludes that the state court "ought to accord a defendant's preference considerable, if not controlling, weight." Thus, a majority of the Court appears to believe that in cases like these, when the defendant seeks to vacate the plea, that relief should generally be granted.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## 25 LED2D 763, 397 US 759  McMANN v RICHARDSON

DANIEL McMANN, Warden, et al., Petitioners,

*vs.*

WILLIE RICHARDSON et al.

## 397 US 759, 25 L Ed 2d 763, 90 S Ct 1441

[No. 153]

Argued February 24, 1970.

Decided May 4, 1970.

## 25 LED2D / 25 LED2D 763, 397 US 759  McMANN v RICHARDSON / SUMMARY

### SUMMARY

Three convicts had pleaded guilty in unrelated cases in various New York state courts, and on the basis of their pleas of guilty, had been convicted and sentenced, prior to the date of the United States Supreme Court decision in Jackson v Denno (1964) 378 US 368, 12 L Ed 2d 908, 84 S Ct 1774, 1 ALR3d 1205, which held that certain New York procedures for determining the voluntariness of confessions were unconstitutional. After unsuccessfully applying for collateral relief in the state courts, the convicts sought habeas corpus relief in Federal District Courts, alleging that their pleas of guilty had resulted from coerced confessions. The District Courts, without granting hearings, denied relief, but the Court of Appeals for the Second Circuit reversed and remanded each of the cases, holding that the allegations in each case concerning the manner in which the confession was coerced and the connection between the confession and the guilty plea were sufficient to require the District Court to hold a hearing, since constitutionally acceptable procedures had, prior to Jackson v Denno, been unavailable to the convicts to test the voluntariness of their confessions. Besides remanding each of the cases for hearings on the issue of coerced confessions, the Court of Appeals also remanded the cases for hearings on the additional issues (1) whether one of the convicts had received inadequate assistance of counsel allegedly arising from a short period of consultation and counsel's advice to the effect that the

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

confession issue could be raised after a plea of guilty (408 F.2d 48); (2) whether counsel for another of the convicts had failed to consider an alibi defense or to make it clear that the plea of guilty was to a felony rather than to a misdemeanor (408 F.2d 658); and (3) whether the state trial judge had coerced another of the convicts to plead guilty by threatening him as to the probable sentence which would result if he went to trial and was found guilty (409 F.2d 1016).<*pg. 764>

On certiorari, the United States Supreme Court vacated and remanded the cases. In an opinion by White, J., expressing the views of five members of the court, it was held that the convicts were not entitled to a hearing on the issue whether their pleas of guilty had been motivated by coerced confessions.

Black, J., while still adhering to his dissent in Jackson v Denno, concurred in the court's opinion and judgment.

Brennan, J., joined by Douglas and Marshall, JJ., dissenting, would affirm the judgments of the Court of Appeals on the ground that the convicts were entitled to a hearing on their claims that coerced confessions and a procedural device which the Supreme Court condemned as unconstitutional in Jackson v Denno had deterred them from exercising their constitutional rights.

## 25 LED2D / 25 LED2D 763, 397 US 759  McMANN v RICHARDSON / SUBJECT OF ANNOTATION

### SUBJECT OF ANNOTATION

**Beginning on page 1025, infra.**

**Validity of guilty pleas**

## 25 LED2D / 25 LED2D 763, 397 US 759  McMANN v RICHARDSON / RESEARCH REFERENCES

### RESEARCH REFERENCES

21 Am Jur 2d, Criminal Law §§ 485, 495; 39 Am Jur 2d, Habeas Corpus § 143

US L Ed Digest, Constitutional Law § 835; Criminal Law §§ 46.4, 59, 63; Habeas Corpus §§ 47, 121

ALR Digests, Criminal Law §§ 145, 149, 149.3, 152

L Ed Index to Anno, Criminal Law; Habeas Corpus

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

ALR Quick Index, Guilty Plea

Federal Quick Index, Guilty Plea; Habeas Corpus

## 25 LED2D / 25 LED2D 763, 397 US 759  McMANN v RICHARDSON / ANNOTATION REFERENCES

### ANNOTATION REFERENCES

Validity of guilty pleas.  25 L Ed 2d 1025.

Necessity of hearing in federal habeas corpus proceedings challenging validity of conviction of crime.  9 L Ed 2d 1246.

Accused's right to counsel under the Federal Constitution.  93 L Ed 137, 2 L Ed 2d 1644, 9 L Ed 2d 1260, 18 L Ed 2d 1420.

United States Supreme Court's views as to retroactive effect of its own decisions announcing new rules.  22 L Ed 2d 821.

Prospective or retroactive operation of overruling decisions.  14 L Ed 2d 992; 10 ALR3d 1371.

Court's duty to advise or admonish accused as to consequences of plea of guilty, or to determine that he is advised thereof.  97 ALR2d 549.

Withdrawal of plea of guilty and substitution of plea of not guilty after conviction.  146 ALR 1430.

## 25 LED2D / 25 LED2D 763, 397 US 759  McMANN v RICHARDSON / HEADNOTES
### HEADNOTES

### Classified to U.S. Supreme Court Digest, Lawyers' Edition

## Witnesses § 88 - admission by accused - compulsion

1. A defendant's own admission in open court that he committed the acts with which he is charged may not be compelled.

## Criminal Law § 63 - plea of guilty - waiver

2. Since a plea of guilty is also a waiver of trial-and unless the applicable law otherwise provides, a waiver of the right to contest the admissibility <*pg. 765> of any evidence the state might have offered against the defendant-it must be an intelligent act done with sufficient

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(3)

awareness of the relevant circumstances and likely consequences.

Annotation: p.1025, infra.

## Habeas Corpus § 47 - relief - plea of guilty

3. A confession, even if coerced, is not a sufficient factor in a plea of guilty to justify habeas corpus relief from a conviction and sentence based on such plea, where (1) the defendant has his own reasons for pleading guilty wholly aside from the strength of the case against him, or (2) the defendant, although he would have gone to trial had he thought the state could not prove its case, is motivated by evidence against him independent of the confession.

Annotation: p.1025, infra.

## Criminal Law § 59 - plea of guilty

4. A guilty plea by an accused from whom a coerced confession has been obtained is properly open to challenge where (1) he has not been assisted by counsel, or (2) the circumstances which coerced the confession have had abiding impact and have also tainted the plea.

Annotation: p.1025, infra.

## Habeas Corpus § 47, 121 - hearing - relief - plea of guilty - coerced confession

5. After a conviction based on a plea of guilty, a defendant is not entitled to a hearing, and to relief if his factual claims are accepted, when his petition for habeas corpus alleges that his confession was in fact coerced and that it motivated his plea, in those situations involving the counseled defendant who allegedly would put the state to its proof if there was a substantial enough chance of acquittal, who would do so except for a prior confession that might be offered against him, and who because of the confession has decided to plead guilty to save himself the expense and agony of a trial and perhaps also to minimize the penalty that might be imposed.

Annotation: p.1025, infra.

## Criminal Law § 63 - plea of guilty - bypass of remedies

6. A guilty plea in a state criminal proceeding is nothing less than a refusal to present federal constitutional claims to the state court in the first instance-a choice by the defendant to take the benefits, if any, of a plea of guilty and then to pursue his coerced confession claim in collateral proceedings-where the evidence aside from a confession is weak and the defendant has no reasons of his own to plead; whether this plain bypass of state remedies is an intelligent act depends on whether the defendant was so incompetently advised by counsel concerning the forum in which he should first present his federal claim that the Constitution will afford him another chance to plead.

## Constitutional Law § 835; Criminal Law § 59 - guilty plea - voluntariness

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

7. Nothing suggests that a defendant's plea of guilty, as distinguished from his confession, is an involuntary act where the probability of the state's being permitted to use the confession as evidence is sufficient to convince him that the state's case is too strong to contest and that a plea of guilty is the most advantageous course; his later petition for collateral relief asserting that a coerced confession induced his plea is at most a claim that the admissibility of his confession was mistakenly assessed, and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act, but the Constitution does not render pleas of guilty so vulnerable.

Annotation: p.1025, infra.

### Criminal Law § 63 - plea of guilty - waiver

8. Waiving trial by pleading guilty entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken as to the facts or as to what a court's judgment might be on given facts.<*pg. 766>

### Criminal Law § 46.4, 59 - plea of guilty - effective assistance of counsel

9. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a postconviction hearing, and the fact that the United States Supreme Court might subsequently hold a defendant's confession inadmissible in evidence does not justify the conclusion that the defendant's attorney was incompetent or ineffective when he thought the admissibility of the confession sufficiently probable to advise a plea of guilty.

Annotation: p.1025, infra.

### Criminal Law § 59 - plea of guilty

10. A defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession.

Annotation: p.1025, infra.

### Criminal Law § 59 - plea of guilty

11. Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.

Annotation: p.1025, infra.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Criminal Law § 46.4 - effective assistance of counsel

12. Defendants facing felony charges are entitled to the effective assistance of competent counsel, but beyond this the matter, for the most part, should be left to the good sense and discretion of the trial courts with the admonition that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts.

## Criminal Law § 46.4; Habeas Corpus § 47, 121 - hearing - relief - plea of guilty - coerced confession - effective assistance of counsel

13. A defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to a hearing on his petition for habeas corpus, even if the plea of guilty was entered prior to the United States Supreme Court decision in Jackson v Denno (1964) 378 US 368, 12 L Ed 2d 908, 84 S Ct 1774, 1 ALR3d 1205, which held that certain state procedures for determining the voluntariness of confessions were unconstitutional; a plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney; and it cannot be shown that there was gross error on the part of counsel when he recommended that the defendant plead guilty instead of going to trial and challenging the state procedures for determining the admissibility of the confessions, where the Supreme Court had previously held that there was not constitutional infirmity in such procedures, and counsel could not be expected to anticipate that the Supreme Court would later hold to the contrary as it did in Jackson v Denno.

Annotation: p.1025, infra.

## States § 47 - criminal law - finality of convictions

14. A constitutional rule invalidating all New York guilty pleas which were motivated by confessions and which were entered prior to the United States Supreme Court decision in Jackson v Denno (1964) 378 US 368, 12 L Ed 2d 908, 84 S Ct 1774, 1 ALR3d 1205, which held that certain New York procedures for determining the voluntariness of confessions were unconstitutional, would be an improvident invasion of the state's interests in maintaining the finality of guilty plea convictions which were valid under constitutional standards applicable at the time.<*pg. 767>

## Criminal Law § 63 - plea of guilty - waiver

15. It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt by pleading guilty, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts; and although he might have pleaded differently had later-decided cases then been the

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.

Annotation: p.1025, infra.

### Appeal and Error § 1688 - remand

16. Although expressing no disagreement with a United States Court of Appeals holding that a habeas corpus hearing was required to consider claims other than the claim that a plea of guilty rested on a coerced confession, the United States Supreme Court, upon concluding that the Court of Appeals erred in holding that a hearing was required to consider the claim that the plea of guilty rested on a coerced confession, will vacate the judgment of the Court of Appeals and remand the case for further proceedings, in which the Court of Appeals will be required to reassess the petitions for habeas corpus in the light of the standards expressed in the Supreme Court's opinion.

## 25 LED2D / 25 LED2D 763, 397 US 759  McMANN v RICHARDSON / APPEARANCES OF COUNSEL ARGUING CASE

### APPEARANCES OF COUNSEL ARGUING CASE

*Brenda Soloff* argued the cause for petitioners.
*Michael R. Juviler* argued the cause for the District Attorney of New York County, as amicus curiae, by special leave of court.
*Gretchen White Oberman* argued the cause for respondents.

Briefs of Counsel, p.1061, infra.

## 25 LED2D / 25 LED2D 763, 397 US 759  McMANN v RICHARDSON / OPINION
### OPINION
### [397 US 760]

Mr. Justice *White* delivered the opinion of the Court.

The petition for certiorari, which we granted, 396 US 813, 24 L Ed 2d 67, 90 S Ct 65 (1969), seeks reversal of three separate judgments of the Court of Appeals for the Second Circuit ordering hearings on petitions for habeas corpus filed by the respondents in this case.[1]   The principal issue before us is whether and to what extent an otherwise valid guilty plea may be impeached in collateral proceedings by assertions or proof that the plea was motivated by a prior coerced confession. We find ourselves in substantial disagreement with the Court of Appeals.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[397 US 761]

I

The three respondents now before us are Dash, Richardson, and Williams. We first state the essential facts involved.

Dash: In February 1959, respondent Dash was charged with first-degree robbery which, because Dash had previously been convicted of a felony, was punishable by up to 60 years' imprisonment.[2]   After pleading guilty to robbery in the <*pg. 768> second degree in April, he was sentenced to a term of eight to 12 years as a second-felony offender.[3]   His petition for collateral relief in the state courts in 1963 was denied without a hearing.[4]

[397 US 762]

Relief was then sought in the United States District Court for the Southern District of New York where his petition for habeas corpus alleged that his guilty plea was the illegal product of a coerced confession and of the trial judge's threat to impose a 60-year sentence if he was convicted after a plea of not guilty. His petition asserted that he had been beaten, refused counsel, and threatened with false charges prior to his confession and that the trial judge's threat was made during an off-the-record colloquy in one of Dash's appearances in court prior to the date of his plea of guilty. Dash also asserted that his court-appointed attorney had advised pleading guilty since Dash did not "stand a chance due to the alleged confession signed" by him. The District Court denied the petition without a hearing because "a voluntary plea of guilty entered on advice of counsel constitutes a waiver of all nonjurisdictional defects in any prior stage of the proceedings against the defendant," citing United States ex rel. Glenn v McMann, 349 F.2d 1018 (CA2d Cir 1965), cert denied, 383 US 915, 15 L Ed 2d 669, 86 S Ct 906 (1966), and other cases. The allegation of coercion by the trial judge did not call for a hearing since the prosecutor had filed an affidavit in the state court categorically denying that the trial judge ever threatened the defendant. Dash then appealed to the Court of Appeals for the Second Circuit.

Richardson: Respondent Richardson was indicted in April 1963 for murder in the first degree. Two attorneys were assigned to represent Richardson. He initially pleaded not guilty but in July withdrew his plea and pleaded guilty to murder in the second degree, specifically admitting at the time that he struck the victim with a knife. He was convicted and sentenced to a term of 30 years to life. Following the denial without a hearing of his application for collateral relief in the

[397 US 763]

state courts,[5] Richardson filed his petition for habeas corpus in the United States <*pg. 769>

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

District Court for the Northern District of New York, alleging in conclusory fashion that his plea of guilty was induced by a coerced confession and by ineffective court-appointed counsel. His petition was denied without a hearing, and he appealed to the Court of Appeals for the Second Circuit, including with his appellate brief a supplemental affidavit in which he alleged that he was beaten into confessing the crime, that his assigned attorney conferred with him only 10 minutes prior to the day the plea of guilty was taken, that he advised his attorney that he did not want to plead guilty to something he did not do, and that his attorney advised him to plead guilty to avoid the electric chair, saying that "this was not the proper time to bring up the confession" and that Richardson "could later explain by a writ of habeas corpus how my confession had been beaten out of me."

Williams: In February 1956, respondent Williams was indicted for five felonies, including rape and robbery. He pleaded guilty to robbery in the second degree in March and was sentenced in April to a term of 7 1/2 to 15 years. After unsuccessful applications for collateral relief in the state courts,[6] he petitioned for a writ of habeas corpus in the United States District Court for the Southern District of New York, asserting that his plea was the consequence of a coerced confession and was made without an understanding of the nature of the

[397 US 764]

charge and the consequences of the plea. In his petition and in documents supporting it, allegations were made that had been handcuffed to a desk while being interrogated, that he was threatened with a pistol and physically abused, and that his attorney, in advising him to plead guilty, ignored his alibi defense and represented that his plea would be to a misdemeanor charge rather than to a felony charge. The petition was denied without a hearing and Williams appealed.

The Court of Appeals for the Second Circuit reversed in each case, sitting en banc and dividing six to three in Dash's case[7] and disposing of Richardson's and Williams' cases in decisions by three-judge panels.[8] In each case it was directed that a hearing be held on the petition for habeas corpus.[9] It was the Court of Appeals' view that

[397 US 765]

a plea of <*pg. 770> guilty is an effective waiver of pretrial irregularities only if the plea is voluntary and that a plea is not voluntary if it is the consequence of an involuntary confession.[10] That the petitioner was represented by counsel and denied the existence of coercion or promises when tendering his plea does not foreclose a hearing on his petition for habeas corpus alleging matters outside the state court record. Although conclusory allegations would in no case suffice, the allegations in each of these cases concerning the manner in which the confession was coerced and the connection between the confession and the plea were deemed sufficient to require a hearing. The law required this much, the Court of Appeals thought, at least in New York, where prior to Jackson v Denno, 378 US 368, 12 L Ed 2d 908, 84 S Ct 1774, 1 ALR3d 1205 (1964),

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

constitutionally acceptable procedures were unavailable to a defendant to test the voluntariness of his confession. The Court of Appeals also ordered a hearing in each case for reasons other than that the plea was claimed to rest on a coerced confession which the defendant had no adequate opportunity to test in the state courts. In the Dash case, the additional issue to be considered was whether the trial judge coerced the guilty plea by threats as to the probable sentence after trial and conviction on a plea of not guilty; in Richardson, the additional issue was the inadequacy of counsel allegedly arising from the

[397 US 766]

short period of consultation and counsel's advice to the effect that the confession issue could be raised after a plea of guilty; and in Williams, the additional question was the alleged failure of counsel to consider Williams' alibi defense and to make it clear that he was pleading to a felony rather than to a misdemeanor.

II

The core of the Court of Appeals' holding is the proposition that if in a collateral proceeding a guilty plea is shown to have been triggered by a coerced confession-if there would have been no plea had there been no confession-the plea is vulnerable at least in cases coming from New York where the guilty plea was taken prior to Jackson v Denno, supra. We are unable to agree with the Court of Appeals on this proposition.

[1][2]    A conviction after a plea of guilty normally rests on the defendant's own admission in open court that he committed the acts with which he is charged. Brady v United States, 397 US at 748, 25 L Ed 2d at 756; McCarthy v United States, 394 US 459, 466, 22 L Ed 2d 418, 425, 89 S Ct 1166 (1969). That admission may not be compelled, and since the plea is also a waiver of trial-and unless the applicable law otherwise <*pg. 771> provides,11 a waiver of the right to contest the admissibility of any evidence the State might have offered against the defendant-it must be an intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." Brady v United States, 397 US at 748, 25 L Ed 2d at 756.

[397 US 767]

[3][4]    For present purposes, we put aside those cases where the defendant has his own reasons for pleading guilty wholly aside from the strength of the case against him as well as those cases where the defendant, although he would have gone to trial had he thought the State could not prove its case, is motivated by evidence against him independent of the confession. In these cases, as the Court of Appeals recognized, the confession, even if coerced, is not a sufficient factor in the plea to justify relief. Neither do we have before us the uncounseled defendant, see Pennsylvania ex rel. Herman v Claudy, 350 US 116, 100 L Ed 126, 76 S Ct 223 (1956), nor the

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

situation where the circumstances that coerced the confession have abiding impact and also taint the plea.  Cf. Chambers v Florida, 309 US 227, 84 L Ed 716, 60 S Ct 472 (1940).  It is not disputed that in such cases a guilty plea is properly open to challenge.12

[5]  The issue on which we differ with the Court of Appeals arises in those situations involving the counseled defendant who allegedly would put the State to its proof if there was a substantial enough chance of acquittal, who would do so except for a prior confession that might be offered against him, and who because of the confession decides to plead guilty to save himself the expense and agony of a trial and perhaps also to minimize

[397 US 768]

the penalty that might be imposed.  After conviction on such a plea, is a defendant entitled to a hearing, and to relief if his factual claims are accepted, when his petition for habeas corpus alleges that his confession was in fact coerced and that it motivated his plea?  We think not if he alleges and proves no more than this.

### III

[6]  Since we are dealing with a defendant who deems his confession crucial to the State's case against him and who would go to trial if he thought his chances of acquittal <*pg. 772> were good, his decision to plead guilty or not turns on whether he thinks the law will allow his confession to be used against him.  For the defendant who considers his confession involuntary and hence unusable against him at a trial, tendering a plea of guilty would seem a most improbable alternative.  The sensible course would be to contest his guilt, prevail on his confession claim at trial, on appeal, or, if necessary, in a collateral proceeding, and win acquittal, however guilty he might be.  The books are full of cases in New York and elsewhere, where the defendant has made this choice and has prevailed.  If he nevertheless pleads guilty the plea can hardly be blamed on the confession which in his view was inadmissible evidence and no proper part of the State's case.  Since by hypothesis the evidence aside from the confession is weak and the defendant has no reasons of his own to plead, a guilty plea in such circumstances is nothing less than a refusal to present his federal claims to the state court in the first instance-a choice by the defendant to take the benefits, if any, of a plea of guilty and then to pursue his coerced- confession claim in collateral proceedings.  Surely later allegations that the confession rendered his plea involuntary would appear incredible, and whether his plain bypass

[397 US 769]

of state remedies was an intelligent act depends on whether he was so incompetently advised by counsel concerning the forum in which he should first present his federal claim that the Constitution will afford him another chance to plead.

[7]  A more credible explanation for a plea of guilty by a defendant who would go to trial

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

except for his prior confession is his prediction that the law will permit his admissions to be used against him by the trier of fact. At least the probability of the State's being permitted to use the confession as evidence is sufficient to convince him that the State's case is too strong to contest and that a plea of guilty is the most advantageous course. Nothing in this train of events suggests that the defendant's plea, as distinguished from his confession, is an involuntary act. His later petition for collateral relief asserting that a *coerced* confession induced his plea is at most a claim that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act. The Constitution, however, does not render pleas of guilty so vulnerable.

[8]  As we said in Brady v United States, 397 US at 756, 757, 25 L Ed 2d at 760, 761, the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross- examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would

[397 US 770]

the trier of fact on those facts find a confession voluntary and admissible?  <*pg. 773> Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

[9]  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. Courts continue to have serious differences among themselves on the admissibility of evidence, both with respect to the proper standard by which the facts are to be judged and with respect to the application of that standard to particular facts. That this Court might hold a defendant's confession inadmissible in evidence, possibly by a divided vote, hardly justifies a conclusion that the defendant's attorney was incompetent or ineffective when he thought the admissibility of the confession sufficiently probable to advise a plea of guilty.

[10][11][12]  In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession.13    Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession

[397 US 771]

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. On the one hand, uncertainty is inherent in predicting court decisions; but on the other hand defendants facing felony charges are entitled to the effective assistance of competent counsel.[14]  Beyond this we think the matter, for the most part, should be left to the good sense and discretion of the trial courts with the admonition that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts.

## IV

[13]  We hold, therefore, that a <*pg. 774> defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to a hearing on his petition for habeas corpus.  Nor do we deem the situation substantially different where the defendant's plea was entered prior to Jackson v Denno, 378 US 368, 12 L Ed 2d 908, 84 S Ct 1774, 1 ALR3d 1205 (1964).  At issue in that case was the constitutionality of the New York procedure for determining the voluntariness of a confession offered in evidence at a jury trial.  This

[397 US 772]

procedure, which would have been applicable to the respondents if they had gone to trial, required the trial judge, when the confession was offered and a prima facie case of voluntariness established, to submit the issue to the jury without himself finally resolving disputed issues of fact and determining whether or not the confession was voluntary.  The Court held this procedure unconstitutional because it did not "afford a reliable determination of the voluntariness of the confession offered in evidence at the trial, did not adequately protect Jackson's right to be free of a conviction based upon a coerced confession and therefore cannot withstand constitutional attack under the Due Process Clause of the Fourteenth Amendment."  378 US, at 377, 12 L Ed 2d at 916, 1 ALR3d 1205.  In reaching that conclusion, the Court overruled Stein v New York, 346 US 156, 97 L Ed 1522, 73 S Ct 1077 (1953), which had approved the New York practice.

Whether a guilty plea was entered before or after Jackson v Denno, the question of the validity of the plea remains the same: was the plea a voluntary and intelligent act of the defendant?  As we have previously set out, a plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney.  For the respondents successfully to claim relief based on Jackson v Denno, each must demonstrate gross error on the part of counsel when he recommended that the defendant plead guilty instead of going to trial and challenging the New York procedures for determining the admissibility of confessions.  Such showing cannot be made,

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

for precisely this challenge was presented to the New York courts and to this Court in Stein v New York, supra, and in 1953 this Court found no constitutional

[397 US 773]

infirmity in the New York procedures for dealing with coerced-confession claims. Counsel for these respondents cannot be faulted for not anticipating Jackson v Denno or for considering the New York procedures to be as valid as the four dissenters in that case thought them to be.

We are unimpressed with the argument that because the decision in Jackson has been applied retroactively to defendants who had previously gone to trial, the defendant whose confession allegedly caused him to plead guilty prior to Jackson is also entitled to a hearing on the voluntariness of his confession and to a trial if his admissions are held to have been coerced. A conviction after trial in which a coerced confession is introduced rests in part on the coerced confession, a constitutionally unacceptable basis for conviction. It is that conviction and the confession on which it rests that the defendant later attacks in collateral proceedings. <*pg. 775> The defendant who pleads guilty is in a different posture. He is convicted on his counseled admission in open court that he committed the crime charged against him. The prior confession is not the basis for the judgment, has never been offered in evidence at a trial, and may never be offered in evidence. Whether or not the advice the defendant received in the pre- Jackson era would have been different had Jackson then been the law has no bearing on the accuracy of the defendant's admission that he committed the crime.

[14][15]  What is at stake in this phase of the case is not the integrity of the state convictions obtained on guilty pleas, but whether, years later, defendants must be permitted to withdraw their pleas, which were perfectly valid when made, and be given another choice between admitting their guilt and putting the State to its proof. It might be suggested that if Jackson had been the law when the pleas in the cases below were made-if the judge

[397 US 774]

had been required to rule on the voluntariness of challenged confessions at a trial-there would have been a better chance of keeping the confessions from the jury and there would have been no guilty pleas. But because of inherent uncertainty in guilty- plea advice, this is a highly speculative matter in any particular case and not an issue promising a meaningful and productive evidentiary hearing long after entry of the guilty plea. The alternative would be a per se constitutional rule invalidating all New York guilty pleas that were motivated by confessions and that were entered prior to Jackson. This would be an improvident invasion of the State's interests in maintaining the finality of guilty plea convictions that were valid under constitutional standards applicable at the time. It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.

V

[16]    As we have previously indicated, in each case below the Court of Appeals ruled that a hearing was required to consider claims other than the claim that the plea of guilty rested on a coerced confession and was entered prior to Jackson v Denno, supra. With respect to these other claims, we now express no disagreement with the judgments of the Court of Appeals; but since our holding will require reassessment of the petitions for habeas

[397 US 775]

corpus in the light of the standards expressed herein, the judgments of the Court of Appeals are vacated and the case is remanded to that court for further proceedings consistent with this opinion.

It is so ordered.

Mr. Justice *Black*, while still adhering to his separate opinion in Jackson v Denno, 378 US 368, 401-423, <*pg. 776> 12 L Ed 2d 908, 930- 942, 84 S Ct 1774, 1 ALR3d 1205, concurs in the Court's opinion and judgment in this case.

## SEPARATE OPINION

Mr. Justice *Brennan*, with whom Mr. Justice *Douglas* and Mr. Justice *Marshall* join, dissenting.

In this case the Court moves yet another step toward the goal of insulating all guilty pleas from subsequent attack no matter what unconstitutional action of government may have induced a particular plea. Respondents alleged in some detail that they were subjected to physical and mental coercion in order to force them to confess; that they succumbed to these pressures; and that because New York provided no constitutionally acceptable procedures for challenging the validity of their confessions in the trial court they had no reasonable alternative to pleading guilty.[1] Respondents' contention, in short, is that their pleas were the product of the State's illegal action. Notwithstanding the possible truth of the claims, the Court holds that respondents are not even entitled to a hearing which would afford them an opportunity to substantiate their allegations. I

[397 US 776]

cannot agree, for it is clear that the result reached by the Court is inconsistent not only with the prior decisions of this Court but also with the position adopted by virtually every court of

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

appeals that has spoken on this issue.2

I

The basic principle applicable to this case was enunciated for the Court by Mr. Justice Black in Pennsylvania ex rel. Herman v Claudy, 350 US 116, 118, 100 L Ed 126, 129, 76 S Ct 223 (1956): "[A] conviction following trial or on a plea of guilty based on a confession extorted by violence or by mental coercion is invalid under the Federal Due Process Clause." The critical factor in this formulation is that convictions entered on guilty pleas are not valid if they are "based on" coerced confessions. A defendant who seeks to overturn his guilty plea must therefore demonstrate the existence of a sufficient interrelationship or nexus between the plea and the antecedent confession so that the plea may be said to be infected by the State's prior illegal action. Thus to invalidate a <*pg. 777> guilty plea more must be shown than the mere existence of a coerced

[397 US 777]

confession. The Court of Appeals so held; respondents do not disagree. The critical question, then, is what elements in addition to the coerced confession must be alleged and proved to demonstrate the invalidity of a guilty plea.

The Court abruptly forecloses any inquiry concerning the impact of an allegedly coerced confession by decreeing that the assistance of "reasonably competent" counsel insulates a defendant from the effects of a prior illegal confession. However, as the Court tacitly concedes, the absolute rigor of its new rule must be adjusted to accommodate cases such as Chambers v Florida, 309 US 227, 84 L Ed 716, 60 S Ct 472 (1940). In that case, the four defendants confessed. Subsequently, three of them pleaded guilty, while the fourth pleaded not guilty and was tried before a jury. Each of the defendants, represented by counsel, stated during the trial that he had confessed and was testifying voluntarily.3 Notwithstanding this testimony in open court, the proffering of guilty pleas, and representation by counsel, the state courts and this Court as well properly permitted a collateral attack upon the judgments of conviction entered on the guilty pleas.

In explication of Chambers, the Court notes that the coercive circumstances that compelled the confessions may "have abiding impact and also taint the plea." Ante, at 767, 25 L Ed 2d at 771. Apparently the Court would permit a defendant who was represented by counsel to attack his conviction collaterally if he could demonstrate that coercive pressures were brought to bear upon him at the

[397 US 778]

very moment he was called to plead. This position is certainly unexceptionable. I cannot agree, however, that the pleading process is constitutionally adequate despite a coerced confession merely because the coercive pressures that compelled the confession ceased prior to the entry of

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the plea. In short, the "abiding impact" of the coerced confession may continue to prejudice a defendant's case or unfairly influence his decisions regarding his legal alternatives.

Moreover, our approach in Pennsylvania ex rel. Herman v Claudy, 350 US 116, 100 L Ed 126, 76 S Ct 223 (1956), is inconsistent with the absolute rule that the Court adopts today. We there considered whether, under all the circumstances of the case, the pressures brought to bear on the defendant by the State, including the extraction of a coerced confession, were sufficient to render his guilty plea involuntary. While the fact that the defendant was not assisted by counsel was given considerable weight in determining involuntariness, it was hardly the sole critical consideration. Thus the Court's attempt to distinguish Claudy on the basis of counsel's assistance alone is unpersuasive. I would continue to adhere to the approach adopted in Chambers and Claudy and take into account all of the circumstances surrounding the entry of a plea rather than attach <*pg. 778> talismanic significance to the presence of counsel.

I concluded in Parker v North Carolina and Brady v United States, 397 US at 802, 25 L Ed 2d at 795, that "the legal concept of 'involuntariness' has not been narrowly confined but refers to a surrender of constitutional rights influenced by considerations that the government cannot properly introduce" into the pleading process. In Parker and Brady the "impermissible factor" introduced by the government was an unconstitutional death penalty scheme; here the improper influence is a coerced confession. In either event the defendant must establish that the unconstitutional influence actually infected the

[397 US 779]

pleading process, that it was a significant factor in his decision to plead guilty. But if he does so, then he is entitled to reversal of the judgment of conviction entered on the plea.

Harrison v United States, 392 US 219, 20 L Ed 2d 1047, 88 S Ct 2008 (1968), lends additional support to this conclusion. There confessions had been illegally procured from a defendant and then introduced at his trial. At a new trial, after reversal of the defendant's conviction, he objected to the introduction of his testimony from the previous trial on the ground that he had been improperly induced to testify at the former trial by the introduction of the inadmissible confessions. We sustained this contention, noting in part that "the petitioner testified only after the Government had illegally introduced into evidence three confessions, all wrongfully obtained, and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby-the fruit of the poisonous tree, to invoke a timeworn metaphor. For the 'essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.' Silverthorne Lumber Co. v United States, 251 US 385, 392 [64 L Ed 319, 321, 40 S Ct 182, 24 ALR 1426].

"... The question is not *whether* the petitioner made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of confessions illegally obtained and hence improperly

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible." 392 US, at 222-223, 20 L Ed 2d at 1051. (Emphasis in original.)

The same reasoning is applicable here. That is, if the coerced confession induces a guilty plea, that plea, no

[397 US 780]

less than the surrender of the self-incrimination privilege in Harrison, is the fruit of the State's prior illegal conduct, and thus is vulnerable to attack.4 <*pg. 779>

[397 US 781]

As in Parker and Brady the Court lays great stress upon the ability of counsel to offset the improper influence injected into the pleading process by the State's unconstitutional action. However, here again, the conclusions that the Court draws from the role it assigns to counsel are, in my view, entirely incorrect, for it cannot be blandly assumed, without further discussion, that counsel will be able to render effective assistance to the defendant in freeing him from the burdens of his unconstitutionally extorted confession.

In Parker and Brady there was no action that counsel could take to remove the threat posed by the unconstitutional death penalty scheme. There was no way, in short, to counteract the intrusion of an impermissible factor into the pleading process.

However, where the unconstitutional factor is a coerced confession, it is not necessarily true that counsel's role is so limited. It is a common practice, for example, to hold pretrial hearings or devise other procedures for the purpose of permitting defendants an opportunity to challenge the admissibility of allegedly coerced confessions. If it is assumed that these procedures provide a constitutionally adequate means to attack the validity of the confession, then it must be expected that a defendant who subsequently seeks to overturn his guilty plea will come forward with a persuasive explanation for his failure to invoke those procedures which were readily available to test the validity of his confession.

It does not follow from this that a defendant assisted by counsel can never demonstrate that this failure to

[397 US 782]

invoke the appropriate procedures was justified. The entry of a guilty plea is, essentially, a waiver, or the "intentional relinquishment or abandonment <*pg. 780> of a known right," Johnson v Zerbst, 304 US 458, 464, 82 L Ed 1461, 1466, 58 S Ct 1019, 146 ALR 357 (1938). By pleading guilty the defendant gives up not only his right to a jury trial, Boykin v Alabama, 395 US 238, 23 L Ed 2d 274, 89 S Ct 1709 (1969), but also, in most jurisdictions, the opportunity to

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

challenge the validity of his confession by whatever procedures are provided for that purpose. It is always open to a defendant to establish that his guilty plea was not a constitutionally valid waiver, that he did not deliberately bypass the orderly processes provided to determine the validity of confessions. Cf. Fay v Noia, 372 US 391, 438-440, 9 L Ed 2d 837, 868-870, 83 S Ct 822 (1963). Whether or not there has been a deliberate bypass can be determined, of course, only by a consideration of the total circumstances surrounding the entry of each plea.5

## II

In the foregoing discussion I have assumed that the State has provided a constitutionally adequate method to challenge an allegedly invalid confession in the trial court. That assumption is not applicable to respondents in this case, however, because, as we held in Jackson v Denno, 378 US 368, 12 L Ed 2d 908, 84 S Ct 1774, 1 ALR3d 1205 (1964), the procedure that New York employed at the time their pleas were tendered failed to provide a constitutionally acceptable means to challenge the validity of confessions. Thus, even the

[397 US 783]

most expert appraisal and advice by counsel necessarily had to take into account a procedure for challenging the validity of confessions that was fundamentally defective, but that had nevertheless been approved by this Court in Stein v New York, 346 US 156, 97 L Ed 1522, 73 S Ct 1077 (1953). Hence the advice of counsel could not remedy or offset the constitutional defect infused into the pleading process. Therefore, respondents are entitled to relief if they can establish that confessions were coerced from them and that their guilty pleas were motivated in significant part by their inability to challenge the validity of the confessions in a constitutionally adequate procedure.6  By such a showing they would establish a nexus between the coerced confessions and the subsequent pleas and thereby demonstrate that their respective pleas were the product of the State's illegal action.

The Court seeks to avoid the impact of Jackson v Denno upon pre-Jackson<*pg. 781> guilty pleas by adding a new and totally unjustified element to the Court's confused pattern of retroactivity rules. Jackson v Denno has been held to be retroactive, at least in the sense that it requires hearings to determine the voluntariness of pre-Jackson confessions that were introduced at trial.7  The

[397 US 784]

Court today decides, however, that Jackson's effect is to be limited to situations in which the confession was introduced at trial and is to have no application whatever to guilty pleas. In short, Jackson v Denno is now held to be only partially retroactive, a wholly novel and unacceptable result.

As I understand the Court's opinion, there are basically three reasons why the Court rejects the

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

contention that the Jackson-Denno defect may unconstitutionally infect the pleading process. The first is the highly formalistic notion that the guilty plea, and not the antecedent confession, is the basis of the judgments against respondents. Of course this is true in the technical sense that the guilty plea is *always* the legal basis of a judgment of conviction entered thereon. However, this argument hardly disposes adequately of the contention that the plea in turn was at least partially induced, and therefore is tainted, by the fact that no constitutionally adequate procedures existed to test the validity of a highly prejudicial and allegedly coerced confession.

The Court's formalism is symptomatic of the desire to ignore entirely the motivational aspect of a decision to plead guilty. As long as counsel is present when the defendant pleads, the Court is apparently willing to assume that the government may inject virtually any influence into the process of deciding on a plea. However, as I demonstrated in Parker and Brady, this insistence upon ignoring the factors with which the prosecution confronts the defendant before he pleads departs broadly from the manner in which the voluntariness of guilty pleas has traditionally been approached. In short, the critical question is not, as the Court insists, whether respondents knowingly decided to plead guilty but *why* they made that decision. Cf. Harrison v United States, 392 US 219, 223, 20 L Ed 2d 1047, 1052, 88 S Ct 2008 (1968).

[397 US 785]

Secondly, the Court views the entry of the guilty pleas as waivers of objections to the allegedly coerced confessions. For the reasons previously stated, I do not believe that the pleas were legally voluntary if respondents' allegations are proved. Nor were the pleas the relinquishment of a *known* right, for it was only when Stein v New York, 346 US 156, 97 L Ed 1522, 73 S Ct 1077 (1953), was overruled by Jackson v Denno that it became clear that the New York procedure was constitutionally inadequate. Thus there is no sense in which respondents deliberately bypassed or "waived" state procedures constitutionally adequate to adjudicate their coerced- confession claims. See Moreno v Beto, 415 F.2d 154 (CA5th Cir 1969); cf. Smith v Yeager, 393 US 122, 21 L Ed 2d 246, 89 S Ct 277 (1968).

Finally, the Court takes the position, in effect, that the defect in the<*pg. 782> Stein-approved New York procedure was not very great-that the procedure was only a little bit unconstitutional-and hence that it is too speculative to inquire whether the difference between the pre-Jackson and post-Jackson procedures would, in a particular case, alter the advice given by counsel concerning the desirability of a plea. If, indeed, the deficiency in the pre-Jackson procedure was not very great, then it is difficult to understand why we found it necessary to invalidate the procedure and, particularly, why it was imperative to apply the Jackson decision retroactively. I, for one, have never thought Jackson v Denno is so trivial, that it deals with procedural distinctions of such insignificance that they would necessarily make no difference in the plea advice given to a defendant by his attorney. To the contrary, the extent to which the

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

constitutional defect in the pre-Jackson-Denno procedure actually infected the pleading process cannot be determined by a priori pronouncements by this Court; rather, its effect can be evaluated only after a factual inquiry into the circumstances motivating particular pleas.

[397 US 786]


Despite the disclaimers to the contrary, what is essentially involved both in the instant case and in Brady and Parker is nothing less than the determination of the Court to preserve the sanctity of virtually all judgments obtained by means of guilty pleas. There is no other adequate explanation for the surprising notion of partial retroactivity that the Court today propounds. An approach that shrinks from giving effect to the clear implications of our prior decisions by drawing untenable distinctions may have its appeal, but it hardly furthers the goal of principled decisionmaking. Thus, I am constrained to agree with the concurring judge in the Court of Appeals that it is "the rankest unfairness, and indeed a denigration of the rule of law, to recognize the infirmity of the pre- Jackson v Denno procedure for challenging the legality of a confession in the case of prisoners who went to trial but to deny access to the judicial process to those who improperly pleaded guilty merely because the state would have more difficulty in affording a new trial to them." 409 F.2d, at 1027.

Lest it be thought that my views would render the criminal process "less effective in protecting society against those who have made it impossible to live today in safety," Harrison v United States, 392 US 219, 235, 20 L Ed 2d 1047, 1059, 88 S Ct 2008 (White, J., dissenting), I emphasize again that the *only* issue involved in this case is whether respondents are entitled to a *hearing* on their claims that coerced confessions and a procedural device that we condemned as unconstitutional deterred them from exercising their constitutional rights. Whether or not these allegations have bases in fact is not before us, for these individuals have never been afforded a judicial forum for the presentation of their claims. In these circumstances, I would not simply slam shut the door of the courthouse in their faces.

[397 US 787]


### III

I agree with the Court of Appeals that a hearing is required for the coerced-confession claims presented in these cases. We have, of course, held that a post-conviction hearing must be afforded to defendants whose allegations of constitutional deprivation raise factual issues and <*pg. 783> are neither "vague, conclusory, or palpably incredible," Machibroda v United States, 368 US 487, 495, 7 L Ed 2d 473, 479, 82 S Ct 510 (1962), nor "patently frivolous or false," Pennsylvania ex rel. Herman v Claudy, 350 US 116, 119, 100 L Ed 126, 130, 76 S Ct 223 (1956).[8]  Respondents

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

have raised at least three factual issues that the record in its present form does not resolve: (1) whether confessions were obtained from them; (2) whether these confessions, if given, were coerced; and (3) whether respondents had a justifiable reason for their failure to challenge the validity of the confessions-more specifically, whether the confessions, together with the Jackson-Denno defect in New York's procedures, influenced in significant part the decisions to plead guilty. As to each of these issues, respondents of course bear the burden of proof.

Respondents alleged in some detail that they had been coerced by the police into confessing. They also alleged that the Jackson-Denno defect in the state procedures rendered futile any attempt to challenge the confessions in the state trial court.[9]  The Court of Appeals noted

[397 US 788]

that, in the ordinary case, additional supporting material, such as an affidavit from the attorney who represented the petitioner, should be appended to his habeas corpus petition.  Without elaboration, however, the Court of Appeals concluded that no material in corroboration was necessary in this case.

To be sure, it is difficult, though not impossible, to believe that without any corroborative evidence a petitioner would ultimately succeed with a sophisticated argument such as the contention that a coerced confession, coupled with the Jackson-Denno defect, induced his guilty plea.  In this connection, the views of the defense attorney when the plea was entered are particularly important because in the ordinary case counsel is in a good position to appraise the factors that actually entered into the decision to plead guilty.  As a technical matter of pleading, however, I would not absolutely require that a petitioner, particularly one who is proceeding pro se, accompany his petition with extensive supporting materials.[10]  It is of course prudent for petitioners who raise a claim such as the one presented in the instant case to append a statement from counsel, <*pg. 784> or at least an explanation of why such a statement was not procured, for the petitioner who does not do so

[397 US 789]

takes a considerable risk that his petition will be denied as vague, conclusory, or frivolous.[11]

The respondents in this case clearly raised the Jackson-Denno issue in their petitions to the District Court.  Furthermore, this Court has not affected the judgment below insofar as it requires hearings for these respondents on issues other than their coerced-confession claims.  In these circumstances, I would not disturb that portion of the Court of Appeals' order that requires the District Court to consider the merits of respondents' coerced-confession allegations.

Accordingly, I would affirm the judgment of the Court of Appeals.

## 25 LED2D / 25 LED2D 763, 397 US 759  McMANN v RICHARDSON / FOOTNOTES

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

# FOOTNOTES

[1] Our grant of certiorari also included a fourth respondent, another petitioner for habeas corpus, Wilbert Ross. See n 7, infra. However, upon consideration of a subsequent suggestion of mootness by reason of Ross' death, we vacated the Court of Appeals' judgment and remanded to the District Court for the Eastern District of New York with directions to dismiss the petition for habeas corpus as moot. 396 US 118, 24 L Ed 2d 303, 90 S Ct 395 (1969).

[2] NY Penal Law § 2125, then in effect, provided that first-degree robbery was punishable by imprisonment for an indeterminate term the minimum of which was to be not less than 10 years and the maximum of which was to be not more than 30 years. Under NY Penal Law § 1941, subd. 1, then in effect, conviction for a section felony was punishable by imprisonment for an indeterminate term with the minimum one-half the maximum set for a first conviction and the maximum twice the maximum set for a first conviction.

In addition to the first-degree robbery charge, Dash was also charged with grand larceny and assault.

[3] Waterman and Devine, two men accused of taking part in the robbery along with Dash, did not plead guilty; after a jury trial they were convicted of first-degree robbery, second- degree grand larceny, and second-degree assault and were sentenced to 15 to 20 years' imprisonment. On appeal these convictions were reversed because of the State's use of post-indictment confessions given by one of the defendants in the absence of counsel. People v Waterman, 12 App Div 2d 84, 208 NYS 2d 596 (1960), aff'd, 9 NY2d 561, 175 NE 2d 445 (1961). Waterman and Devine then pleaded guilty to assault in the second degree and were sentenced to imprisonment for 2 1/2 to 3 years.

[4] The denial of relief was affirmed by the Appellate Division of the New York Supreme Court, People v Dash, 21 App Div 2d 978, 252 NYS2d 1016 (1964), aff'd mem, 16 NY2d 493, 208 NE2d 171 (1965).

[5] The denial of relief was affirmed without opinion by the Appellate Division of the New York Supreme Court, People v Richardson, 23 App Div 2d 969, 260 NYS 2d 586 (1965).

[6] The denial of relief on the claims later presented in the Federal District Court was affirmed without opinion by the Appellate Division of the New York Supreme Court, People v Williams, 25 App Div 2d 620, 268 NYS2d 958 (1966).

[7] United States ex rel. Ross v McMann, 409 F.2d 1016 (CA2d Cir 1969). The Court of Appeals' opinion dealt also with the appeal of Wilbert Ross from a denial of habeas corpus without a hearing by the United States District Court for the Eastern District of New York. Ross in his habeas petition alleged that his 1955 plea of guilty to second-degree murder was induced by the State's possession of an unconstitutionally obtained confession. The Court of Appeals held that, like Dash, Ross was entitled to a hearing on his claims. Along with the three respondents dealt with in this opinion, we granted certiorari as to Ross but the matter was subsequently remanded for dismissal as moot after the death of Ross. See n 1, supra.

[8] United States ex rel. Richardson v McMann, 408 F.2d 48 (CA2d Cir 1969); United States ex rel. Williams v Follette, 408 F.2d 658 (CA2d Cir 1969).

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

9 The same day that the Court of Appeals ordered hearings in the Dash and Richardson cases, the court, en banc and without dissent, held that a hearing was not required in the case of a petitioner for habeas corpus who had pleaded guilty after a trial judge ruled that his confession was admissible in evidence-the Court of Appeals found that the petition for habeas corpus did not allege with sufficient specificity that the plea of guilty was infected by the allegedly coerced confession. United States ex rel. Rosen v Follette, 409 F.2d 1042 (CA2d Cir 1969).

10 The majority and concurring opinions in the Dash case relied on decisions in several other circuits: United States ex rel. Collins v Maroney, 382 F.2d 547 (CA3d Cir 1967); Jones v Cunningham, 297 F.2d 851 (CA4th Cir 1962); Smith v Wainwright, 373 F.2d 506 (CA5th Cir 1967); Carpenter v Wainwright, 372 F.2d 940 (CA5th Cir 1967); Bell v Alabama, 367 F.2d 243 (CA5th Cir 1966), cert denied, 386 US 916, 17 L Ed 2d 788, 87 S Ct 859 (1967); Reed v Henderson, 385 F.2d 995 (CA6th Cir 1967); Smiley v Wilson, 378 F.2d 144 (CA9th Cir 1967); Doran v Wilson, 369 F.2d 505 (CA9th Cir 1966).

11 New York law now permits a defendant to challenge the admissibility of a confession in a pretrial hearing and to appeal from an adverse ruling on the admissibility of the confession even if the conviction is based on a plea of guilty. N Y Code Crim Proc § 813-g (Supp 1969) (effective July 16, 1965). A similar provision permits a defendant to appeal an adverse ruling on a Fourth Amendment claim after a plea of guilty. N Y Code Crim Proc § 813-c (Supp 1969) (effective April 29, 1962).

12 Pennsylvania ex rel. Herman v Claudy, 350 US 116, 100 L Ed 126, 76 S Ct 223 (1956), involved a plea of guilty made by a defendant without assistance of counsel. Herman did not hold that a plea of guilty, offered by a defendant assisted by competent counsel, is invalid whenever induced by the prosecution's possession of a coerced confession. Likewise, Chambers v Florida, 309 US 227, 84 L Ed 716, 60 S Ct 472 (1940), does not support the position taken by the Court of Appeals in these cases. In Chambers the voluntariness of the confessions was properly considered by this Court both because the alleged coercion producing the confessions appeared to carry over to taint the guilty pleas and because the convictions were based on the confessions as well as the guilty pleas. See Chambers v State, 136 Fla 568, 187 So 156 (1939), rev'd 309 US 227, 84 L Ed 716, 60 S Ct 472 (1940).

13 We do not here consider whether a conviction, based on a plea of guilty entered in a State permitting the defendant pleading guilty to challenge on appeal the admissibility of his confession (as in New York after July 16, 1965, see n 11, supra), would be open to attack in federal habeas corpus proceedings on the grounds that the confession was coerced. Cf. United States ex rel. Rogers v Warden, 381 F.2d 209 (CA2d Cir 1967).

14 Since Gideon v Wainwright, 372 US 335, 9 L Ed 2d 799, 83 S Ct 792, 93 ALR 2d 733 (1963), it has been clear that a defendant pleading guilty to a felony charge has a federal right to the assistance of counsel. See White v Maryland, 373 US 59, 10 L Ed 2d 193, 83 S Ct 1050 (1963); Arsenault v Massachusetts, 393 US 5, 21 L Ed 2d 5, 89 S Ct 35 (1968). It has long been recognized that the right to counsel is the right to the effective assistance of counsel. See Reece v Georgia, 350 US 85, 90, 100 L Ed 77, 83, 76 S Ct 167 (1955); Glasser v United States, 315 US 60, 69-70, 86 L Ed 680, 698, 699, 62 S Ct 457 (1942); Avery v Alabama, 308 US 444, 446, 84 L Ed 377, 379, 60 S Ct 321 (1940); Powell v Alabama, 287 US 45, 57, 77 L Ed 158, 164, 53 S Ct 55, 84 ALR 527 (1932).

1 There are additional allegations involved in this case, including Richardson's claim that he was ineffectively represented by counsel when he entered his plea and Dash's contention that he was threatened by the trial judge with imposition of the statutory maximum sentence (60 years) if he elected

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

to stand trial and did not prevail. I understand that the Court does not disturb the Court of Appeals' holding that a hearing is required to consider these additional allegations.

2 The Court does not deny that the decision of the Court of Appeals in the instant case is in complete harmony with the decisions of numerous other courts that have considered the same or similar issues. See, e. g., Moreno v Beto, 415 F.2d 154 (CA5th Cir 1969); United States ex rel McCloud v Rundle, 402 F.2d 853 (CA3d Cir 1968); Kott v Green, 387 F.2d 136 (CA6th Cir 1967); Reed v Henderson, 385 F.2d 995 (CA6th Cir 1967); United States ex rel. Collins v Maroney, 382 F.2d 547 (CA3d Cir 1967); Smiley v Wilson, 378 F.2d 144 (CA9th Cir 1967); Carpenter v Wainwright, 372 F.2d 940 (CA5th Cir 1967); Doran v Wilson, 369 F.2d 505 (CA9th Cir 1966); White v Pepersack, 352 F.2d 470 (CA4th Cir 1965); Zachery v Hale, 286 F Supp 237 (DC MD Ala 1968); United States ex rel. Cuevas v Rundle, 258 F Supp 647 (DC ED Pa 1966); People v Spencer, 66 Cal 2d 158, 424 P2d 715 (1967); Commonwealth v Baity, 428 Pa 306, 237 A2d 172 (1968).

3 "[E]ach of the defendants testified on the trial that the confessions were freely and voluntarily made and that the respective statements of each made upon the trial was the free and voluntary statement of such defendant as a witness in his behalf." Chambers v State, 113 Fla 786, 792, 152 So 437, 438 (1934), on subsequent appeal, 136 Fla 568, 187 So 156 (1939), rev'd, 309 US 227, 84 L Ed 716, 60 S Ct 472 (1940).

4 Indeed, one of the dissenting opinions in Harrison concludes that "[s]imilarly, an inadmissible confession preceding a plea of guilty would taint the plea." 392 US, at 234, 20 L Ed 2d at 1058. (White, J., dissenting). In response to this suggestion, the Court noted that "we decide here only a case in which the prosecution illegally introduced the defendant's confession in evidence against him at trial in its case-in-chief." 392 US, at 223 n 9, 20 L Ed 2d at 1052. Of course, in Harrison we did consider a case in which evidence had been introduced at trial. It hardly follows, however, that the fruit-of-the-poisonous-tree rationale has no application apart from the narrow confines of the Harrison factual context. See generally Fahy v Connecticut, 375 US 85, 11 L Ed 2d 171, 84 S Ct 229 (1963); Wong Sun v United States, 371 US 471, 9 L Ed 2d 441, 83 S Ct 407 (1963); Nardone v United States, 308 US 338, 84 L Ed 307, 60 S Ct 266 (1939).

There are factual differences between Harrison and the instant case, but they are insufficient to undermine the analogy. For example, in Harrison the inadmissible confessions had actually been used in proceedings against the defendant, whereas here no more is involved than the potential use of the coerced confessions. However, confessions have traditionally been considered extremely valuable evidentiary material, and, in the ordinary course of events, it is not to be expected that the prosecution would, on its own initiative, refrain from attempting to introduce a relevant confession. Of course, when a guilty plea is attacked on the ground that it was induced by an involuntary confession, it is always open to the prosecution to establish that there was no confession, that any confession was not coerced, or that the prosecution had decided not to use the confession against the defendant and had communicated this fact to him.

Moreover, it is perhaps not as clear in the instant case as it was in Harrison that the prosecution's illegality infected the subsequent proceedings involving the respective defendants. In Harrison, the defense attorney had initially announced that the defendant would not testify, and the defendant did in fact take the stand only after the prosecution had introduced his confessions. In that circumstance the burden was appropriately placed upon the prosecution to rebut the clear inference that the inadmissible confessions induced the subsequent testimony. By contrast, in the instant case we are dealing with guilty pleas that are usually the culmination of a decision-making process in which the defendant has

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

taken into account numerous factors. It can therefore hardly be established on the basis of mere allegations that, in a given case, a coerced confession induced the guilty plea. This factual difference indicates no more, however, than that the respondents here may have a more difficult time than the petitioner in Harrison in substantiating their respective claims.

**5** If the procedures for challenging the validity of confessions are constitutionally adequate, then a persuasive justification for the failure to invoke them does not arise from the fear that a confession, erroneously or otherwise, will be determined to be voluntary. If this were not true, then no guilty plea could constitute an effective waiver, for the risk of error or adverse result is inherent in every criminal proceeding, and it would be open to every defendant to contend that this risk induced his guilty plea.

**6** The Court of Appeals held that a plea of guilty was not voluntary "if the plea was substantially motivated by a coerced confession the validity of which [the defendant] was unable, for all practical purposes, to contest." 409 F.2d, at 1023. I would accept this formulation with the understanding that a "substantial" motivating factor is any one which is not merely de minimis. Ordinarily, a decision to plead guilty is the result of numerous considerations. As long as a defendant was in fact motivated in significant part by the influence of an unconstitutionally obtained confession that he had no adequate means to challenge, I would relieve him of the consequences of his guilty plea.

**7** See, e. g., Johnson v New Jersey, 384 US 719, 727-728, 16 L Ed 2d 882, 888, 889, 86 S Ct 1772 (1966); Tehan v United States, 382 US 406, 416, 15 L Ed 2d 453, 459, 86 S Ct 459 (1966); Linkletter v Walker, 381 US 618, 639 and n. 20, 14 L Ed 2d 601, 614, 85 S Ct 1731 (1965).

**8** Respondents have never had a hearing in the state courts on their coerced-confession claims because the state courts rejected their contentions on the pleadings. In these circumstances, the Court of Appeals properly instructed the District Court to afford the State a reasonable time to proceed with its own hearings, if it be so advised.

**9** For example, respondent Dash stated the following in his petition to the District Court:

"The futility of relator's position is more clearly seen when this Court considers the fact, that the only choice remaining to him-beside the entry of the plea of guilty to a crime that he had not committed-was to proceed to trial in the hope of challenging the admissibility of the alleged coerced confession. For it was only in the case of Jackson v Denno ... that the Court recognized the insoluable plight of a defendant in New York, faced with the decision whether to challenge the admissibility of a confession, had in violation of the United States Constitution. Relator had no such remedy when he was faced with this situation."

Respondent Williams' petition contains similar references to Jackson v Denno. Respondent Richardson's principal claim relates to the adequacy of the legal assistance afforded him. He concedes that the pre-Jackson-Denno procedure played no role in his decision to plead guilty.

**10** See, e. g., Price v Johnston, 334 US 266, 292, 92 L Ed 1356, 1372, 68 S Ct 1049 (1948).

**11** See, e. g., United States ex rel. Nixon v Follette, 299 F Supp 253 (DC SD NY 1969).

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.